**Occie Hewitt TATE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–91–00775–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 9, 1992.

Discretionary Review Refused
Oct. 14, 1992.

Andrew L. Jefferson, Jr., Houston, for appellant.

John B. Holmes, Jr., Scott A. Durfee, Denise Oncken, Houston, for appellee.

Before DUGGAN, COHEN and PRICE,* JJ.

## OPINION

PRICE, Justice (Assigned).

Appellant was charged with three counts of failure to stop and render aid. On February 15, 1991, he entered a plea of nolo contendere to each count. On June 14, 1991, the trial court sentenced appellant to four years imprisonment on each count and ordered him to pay a $2500 fine on count one. Appellant raises six points of error. We affirm.

On March 17, 1990, appellant was driving his truck northbound on Cullen Street when he struck a curb, crossed two northbound lanes of traffic, crossed a median in the road, and hit three young boys. Two of the boys were seriously injured; the third died. Appellant left the scene of the accident but was located through a check of the vehicle registration on the truck. He first denied involvement but later gave a written statement admitting his involvement.

■ In his first point of error, appellant contends that the visiting judge who received his plea and sentenced him had no authority to conduct the proceedings in the case. Appellant bases his position on the absence in the trial records of a valid order of assignment, signed by the administrative judge of the region, appointing the visiting judge to the case. TEX.GOV'T CODE ANN. § 74.056(a) (Vernon 1988).

Following the filing of appellant's brief, this Court granted the State's motion to supplement the record with the proper order, which had, in error, been omitted from the transcript. The order indicates that Judge P.K. Reiter was appointed to the 180th District Court beginning February 3, 1991, for a period of two weeks, to continue as necessary to complete the trial of any case begun during that period. Judge Reiter took appellant's plea on February 15, and thus was authorized to pass on all other matters growing out of the case, as provided in the order of assignment. TEX. GOV'T CODE ANN. § 74.056 (Vernon 1988).

In a supplemental brief, appellant argues that the visiting judge, although assigned to the 180th District Court, took appellant's plea in the 178th District Court. We interpret this statement to mean that the judge was in the courtroom for the 178th district when the plea was entered. We find this fact to be irrelevant. All relevant documents in the cause indicate that they were filed in the 180th District Court. The physical location of the courtroom is not controlling. In addition, the fact that Judge Reiter had been assigned to another district by the time appellant was sentenced is of no import. Even though he had been assigned to other districts since he was first assigned to the 180th on February 3, the

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

terms of Judge Reiter's assignment specifically authorized him to complete any case begun during the two-week period beginning February 3. That included appellant's case. We overrule appellant's first point of error.

■ In his second point of error, appellant claims that reversible error occurred when the trial court admitted victim impact testimony prior to assessing punishment in violation of TEX.CODE CRIM.P.ANN. art. 42.-03, § 1(b) (Vernon Supp.1992). An amendment to the statute took effect on June 5, 1991, during the pendency of this suit, and provided that victim impact evidence was not to be presented until after the trial judge announced his sentence.

■ At the presentence investigation hearing, the State called two witnesses, parents of two of the children injured in the incident, who testified about the physical and emotional effects the accident had on them and the children. Appellant did not object at the time this testimony was offered or at any point during it. Appellant's failure to object to the testimony at trial waives any error on appeal. TEX. R.APP.P. 52(a).

■ Furthermore, the testimony offered at the hearing was already admitted before the court in the presentence investigation report, which contained summaries of the investigator's interviews with the witnesses. Where evidence is admitted without objection at one point, there is no error in later admission of the same evidence. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim.App.1984), *Lee v. State*, 779 S.W.2d 913, 916 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

■ Finally, in a trial to the court, when there is nothing in the record to show that the judgment was based on evidence that is or that is claimed to be inadmissible, it is presumed that the trial judge disregarded the inadmissible evidence. Judgment will not be reversed if sufficient proper evidence was admitted to sustain the judgment. *Tolbert v. State*, 743 S.W.2d 631, 633 (Tex.Crim.App.1988). We overrule appellant's second point of error.

In his third point of error, appellant complains that the subpoena served on the visiting judge should not have been quashed and that he should have been allowed to examine the judge at the hearing on his motion for new trial. *See Joachim v. Chambers*, 815 S.W.2d 234, 239 (Tex. 1991).

■ Appellant contends that Judge Reiter was biased by a personal experience involving the judge's daughter, who was seriously injured in an auto accident allegedly involving the use of alcohol. Appellant subpoenaed Judge Reiter to testify at the hearing on his motion for new trial, presumably to question him about his experience and alleged bias, reasoning that "no one other than Judge Reiter could testify as to whether the memory of his daughter's tragedy prevented him from considering the full range of punishment in this case."

Appellant, who is an attorney, testified at the hearing on the motion for new trial that he would not have agreed to submit his case to Judge Reiter if he had known about the judge's daughter and her injuries. On appeal, counsel for appellant argues that no defense attorney under similar circumstances would have accepted a juror who had had a tragic experience so similar to that involved in the case.

On Judge Reiter's motion, Judge Lykos quashed the subpoena. After hearing testimony from a witness who had some knowledge of the fact of Judge Reiter's daughter's injury, Judge Lykos noted that "there has been absolutely no showing in this court of any bias or prejudice or animus on the part of the judge who heard the evidence in this case." Judge Lykos concluded that without a threshold showing of any improper conduct by the trial judge, an inquiry into his mental processes in arriving at his decision would be improper and would threaten the foundation of an honorable and independent judiciary. Judge Lykos stood on her ruling quashing the subpoena. We find no error in this ruling.

Texas law does not directly address the precise issue presented in this case, that is,

whether a judge can be called to testify about personal experiences that are alleged to have biased him in his trial of the case. Appellant relies on dicta in the *Joachim* [1] case, in which the supreme court stated, "[W]e do not hold that [these standards] prohibit judges from ever testifying in court. Certainly, a judge must, like anyone else, testify to relevant facts within his personal knowledge when summoned to do so." *Joachim*, 815 S.W.2d at 239. Appellant also refers to the Code of Judicial Conduct, Canon 2 (1988), which says in part a that "a judge should not allow family ... relationships to influence his ... judgment."

Federal decisions state the principles that judges are presumed to be persons of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances. *See U.S. v. Morgan*, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1940). An exemption from compulsory testimony must necessarily exist for certain government officials "to protect the integrity and individual responsibility of governmental officials whose duties involve the exercise of judicial ... authority." *Gary W. v. State of Louisiana, Dept. of Health and Human Resources*, 861 F.2d 1366, 1368 (5th Cir.1988). In general, the federal courts have protected judicial or quasi-judicial officials from being compelled to testify about their mental process in arriving at a decision, absent a showing of extraordinary circumstances. *See Morgan*, 313 U.S. at 422, 61 S.Ct. at 1004; *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Beverly v. U.S.*, 468 F.2d 732, 743 (5th Cir.1972); *South Terminal Corp. v. EPA*, 504 F.2d 646, 675 (1st Cir.1974); *KFC Nat'l Management Corp. v. NLRB*, 497 F.2d 298, 304–305 (2d Cir.1974); *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 69 (D.C.Cir.1974).

Texas law has not established circumstances or conditions under which a judicial official might properly be compelled to articulate his reasons for a decision in a particular case, and we do not propose to state such a rule here. However, we conclude that if such a rule were to be established, the better rule would require, at the very least, a threshold showing of improper conduct on the part of the judge that would justify compelling him to testify. Here, no such showing was made. Appellant cites nothing in the record that would arguably demonstrate bias or prejudice on the part of the trial judge. The bare fact of Judge Reiter's daughter's injury and rehabilitation more than one year before appellant's sentencing cannot overcome the strong presumption that the judge decided the case impartially and fairly. Because appellant has not shown extraordinary circumstances that would justify compelling the judge to testify, we find no error in Judge Lykos' ruling quashing the subpoena. We overrule appellant's third point of error.

In his fourth point of error, appellant complains about the trial court's action in denying his motion for new trial based on newly discovered evidence and in summarizing the evidence at the close of the hearing.

After his sentencing, appellant was able to locate two witnesses who testified at the hearing on the motion for new trial. They stated that appellant did attempt to aid the victims by covering them with a blanket and by placing a jacket under one boy's head.

■ To obtain a new trial because of newly discovered evidence, an appellant must show (1) the newly discovered evidence was unknown to him at the time of trial, (2) his failure to discover the evidence was not due to his want of diligence, (3) the evidence would probably bring about a different result in another trial, and (4) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching. *Drew v. State*, 743 S.W.2d 207, 226 (Tex.Crim.App.1987); *Williams v.*

---

1. In *Joachim,* the issue was whether retired district judge William Blanton could testify as an expert witness in a legal malpractice case that arose out of a case that had been assigned to a visiting judge in Judge Blanton's court. The supreme court held that Judge Blanton could not be called to testify.

*State,* 504 S.W.2d 477, 482 (Tex.Crim.App. 1974). Appellant must show that the trial court's ruling on the motion constituted an abuse of discretion. *Van Byrd v. State,* 605 S.W.2d 265, 267 (Tex.Crim.App. [Panel Op.] 1980); *Alford v. State,* 807 S.W.2d 840, 841 (Tex.App.—Waco 1991, no pet.).

■ The State agrees with appellant's contention that, despite his diligence, the two witnesses were not discovered before his plea and sentencing. However, the State also points out that a third witness, Mr. Cooper, was known to appellant and was available prior to and throughout the plea and sentencing. Cooper testified that he came upon the scene shortly after the accident happened. He saw appellant assisting the boys who were hurt. He observed appellant put a blanket over one boy and put a jacket under another boy's head. Cooper stayed at the scene directing traffic until the ambulances and police arrived. Appellant recognized Cooper. In addition, Cooper and appellant discussed the circumstances of the accident shortly afterward. Nevertheless, appellant did not call Cooper to testify at trial.

Testimony at the hearing on the motion for new trial indicated that the newly discovered witness' testimony would have been substantially the same as that of Mr. Cooper. We conclude, therefore, that appellant's newly discovered evidence is not really new evidence; it is testimony from new *witnesses* that was cumulative of other evidence known to appellant before and at the time of his plea. Appellant thus fails to meet the fundamental requirement to show that the newly discovered evidence was unknown to him at the time of the plea. *Drew,* 743 S.W.2d at 226; *Raetzsch v. State* 745 S.W.2d 520, 522 (Tex.App.— Corpus Christi 1988, pet. ref'd).

Furthermore, the PSI report contained the following statement by appellant of his actions after the accident:

> I got out of the vehicle and saw that three people were hurt and at that time I took off my coat and started to give what assistance I could. I placed my coat under the head of one young man, and yelled for someone to call an ambulance. I first stopped the traffic. I requested and received, a blanket from a motorist which I placed over another child. I spoke with each child and encouraged each to remain still.

By virtue of this statement, the evidence of appellant's actions following the accident was before the trial court at the time of sentencing. Furthermore, the new evidence was merely cumulative and corroborative of the statement in the PSI report and, as such, could not support the granting of a new trial. *Jarvis v. State,* 429 S.W.2d 885, 887 (Tex.Crim.App.1968).

Finally, we are mindful that appellant pled no contest to three counts of failure to stop and render assistance. The trial court's finding of guilt was based on appellant's plea. *See Snyder v. State,* 629 S.W.2d 930, 932 (Tex.Crim.App.1982) (a plea of nolo contendere has the same effect as a guilty plea). The evidence of appellant's attempts to render aid that would have been provided by the newly discovered witnesses would not, therefore, have changed the trial court's adjudication of guilt. *See Sawyer v. State,* 778 S.W.2d 541 (Tex.App.—Corpus Christi 1989, pet. ref'd) (defendant's motion for new trial alleging newly discovered evidence was inconsistent with his plea of guilty); *Beard v. State,* 703 S.W.2d 273, 274–75 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd).

■ Appellant's fourth point of error also alleges that the trial judge erred in summarizing the evidence at the close of the hearing on appellant's motion for new trial. Rule 31(e)(2) of the Texas Rules of Appellate Procedure provides that in granting or overruling a motion for new trial, "[t]he judge shall not sum up, discuss or comment on evidence in the case." TEX. R.APP.P. 31(e)(2). Case law establishes, however, that to constitute reversible error in this situation, the appellant must show that he suffered some harm from the error alleged. *Whitmore v. State,* 570 S.W.2d 889, 892 (Tex.Crim.App.1976); *Baker v. State,* 625 S.W.2d 840, 842 (Tex.App.— Amarillo 1981, no pet.). Appellant does not specifically allege or demonstrate harm

from the court's action. We overrule appellant's fourth point of error.

In point of error five, appellant complains that the trial court erred in refusing to grant his motion for new trial on grounds that the State breached its plea bargain agreement with him. Appellant contends that the State orally promised him that (1) it would not "jump up and down" at the punishment hearing, or (2) argue for a period of incarceration, and (3) no family members of the victims would testify. Thus, he argues, the State and the judge implied that appellant would be granted deferred adjudication.

 Appellant claims the State breached this agreement when (1) a prosecutor other than the prosecutor with whom appellant had negotiated argued for the State at the hearing, (2) the prosecutor argued for a period of incarceration, and (3) two family members were called to testify.[2] The State contends that appellant waived any complaint because the record reflects no objection to these alleged breaches of the agreement.

The record contains appellant's plea, which states that it is entered "without an agreed recommendation. *State reserves the right to argue* after a PSI." (Emphasis added.) The record also contains the court's admonishments to the appellant and the appellant's statements and waivers, which provide that he entered the plea with full knowledge and understanding of its terms.[3]

 A plea bargain requires an offer by an authorized agent of the State to recommend a sentence or to make some other concession, such as a reduced charge in exchange for a specified plea by the defendant. *Wayne v. State*, 756 S.W.2d 724, 728 (Tex.Crim.App.1988). When a defendant agrees to the terms of a plea bargain agreement, in effect he becomes a party to a contract, and he is deemed to

have entered into the agreement knowingly and voluntarily unless he shows otherwise. *Ex parte Williams*, 637 S.W.2d 943, 947 (Tex.Crim.App.1982). Once it is established that the State made the promise, the plea bargain is enforceable against the State as well. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). In regard to the State's recommendation on punishment, however, the "contract" does not become enforceable until the trial judge announces that the court will be bound by the plea bargain agreement. *Williams*, 637 S.W.2d at 947; *see also Wayne*, 756 S.W.2d at 728; *Garcia v. State*, 801 S.W.2d 20, 21 (Tex. App.—Corpus Christi 1990, no pet.).

At the motion for new trial hearing, both counsel for appellant and the district attorney testified about their oral agreement regarding the manner in which the punishment hearing would be handled. Appellant understood that the district attorney "would not jump up and down and ask for a period of incarceration." The D.A. agreed that he told appellant "it's not a case where we're going to jump up and down as far as a punishment hearing, as far as our remarks to the Court." However, the D.A. denied telling appellant he would not ask for a period of incarceration or that he would not call family members to testify. Elaborating, the D.A. explained that he agreed to simply make a recommendation on the case without making an "emotional-type argument like you would make before a jury." The State's reservation of its right to argue at the hearing tends to confirm the D.A.'s characterization of the agreement.

The record in this case does not demonstrate the existence of an enforceable plea bargain. There was no written memorial of the alleged agreement regarding the procedural concessions to be made by the State. In his testimony at the motion for new trial, the prosecutor denied all agree-

---

**2.** As we have previously determined, objection to the admission of this testimony was not made and error, therefore, was not preserved. We also noted earlier that the testimony of the family members was merely cumulative of their written statements that were included without

objection in the presentence investigation report.

**3.** As previously noted, appellant is a practicing attorney.

ments other than the agreement "not to jump up and down" in his argument at the sentencing hearing. The written plea signed by appellant clearly indicates that the State reserved its right to argue after the PSI. The trial judge never announced that he was in agreement with any recommendation of punishment allegedly offered by the State, and, indeed, the record reflects that no such recommendation was made. *See Garcia,* 801 S.W.2d at 21; *Wilson v. State,* 689 S.W.2d 311, 314 (Tex. App.—Fort Worth 1985, pet. ref'd).

We find that the State did not breach that aspect of the agreement that was established—not to "jump up and down" in its remarks at the punishment hearing.[4] Considering the facts of the case, the argument presented by the district attorney is properly characterized by the State as "low keyed." Accordingly, we overrule appellant's fifth point of error.

In his final point of error appellant argues that, in light of the record as a whole, his conviction should be reversed as a matter of due process and fundamental fairness. He bases his argument on his earlier points challenging the impartiality of the judge and the failure of the State to honor the alleged plea bargain. Having overruled those points of error, we find no merit in appellant's final point and it is overruled.

The judgment of the trial court is affirmed.

---

4. The prosecutor's closing argument, in its entirety, was as follows:

"Your Honor, the State is not contesting at all the fact that Mr. Tate is a man of good character; but his good character simply does not excuse what happened in this case. His actions in this case were simply inexcusable by any standard. His actions have severely impacted the lives of two families. We have one dead young man and two severely injured young men. Their lives have been altered. Their grades are suffering, and they're having problems in coping with their day-to-day activities. They're having trouble getting along, and their attitudes have changed. I'd ask the Court to keep these things in mind. The presentence investigation clearly outlines the details of the facts of the case. I'm not going to go over those again. I think that, notwithstanding Mr. Tate's good character—I think the overriding concern in this case should be the facts of the case and the defendant's actions in this case; and if you consider those, I believe that the only appropriate punishment in this case would be confinement and not probation."