**Ex parte Charles SPICUZZA, Appellant.**

**No. 01–94–01242–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 18, 1995.

Discretionary Review Refused
Aug. 23, 1995.

Brian W. Wice, Houston, for appellant.

John B. Holmes, Rickke Burke Graber, Houston, for State.

Before HUTSON–DUNN, MIRABAL and HEDGES, JJ.

## OPINION

HUTSON–DUNN, Justice,

This is an accelerated appeal. The appellant, Charles Dean Spicuzza, appeals from a habeas corpus order in which the trial court set aside appellant's no-contest plea and set his case for trial. Although the court granted appellant's application for writ of habeas corpus, it held that he was not entitled to specific performance of an alleged plea agreement. In his sole point of error, appellant contends that the court erred in refusing to specifically enforce the agreement because appellant entered his plea based upon promises by the trial court that it would terminate

appellant's deferred adjudication early. We affirm.

## I. Summary of Facts

Appellant was indicted for murder in 1982. In May of 1991, appellant pleaded no-contest without an agreed punishment recommendation, and the trial court assessed punishment at 10–years deferred adjudication with community supervision.[1] The State filed a motion to adjudicate appellant's guilt on September 7, 1994, and alleged that he had violated the conditions of his community supervision. Appellant sought pretrial habeas corpus relief to terminate his community supervision on the grounds that he was induced to plead no-contest after the trial court, the State, and appellant's attorney agreed that the court would terminate appellant's community supervision and dismiss the case one year after appellant entered his no-contest plea.

Kent Schaffer, appellant's attorney, testified at the hearing on appellant's application for writ of habeas corpus that he met in chambers with Judge Norman Lanford and Mark Evans, the prosecutor, to discuss plea negotiations shortly before appellant's case was set for trial. Schaffer testified that the discussions proceeded as follows: Evans stated that the district attorney's office prohibited prosecutors from agreeing to community supervision in murder cases. Nevertheless, Evans thought that appellant's case was appropriate for deferred adjudication. Thus, he agreed to waive the State's right to a jury trial in exchange for a plea by appellant. Judge Lanford proposed an agreement whereby appellant would enter a no-contest plea in exchange for a 10–year sentence of deferred adjudication with community supervision. Further, at the end of one year, the court would terminate appellant's community supervision since appellant had already been

---

1. All references in the record of this case are to probation rather than community supervision. However, the Texas Legislature recently replaced references to "probation" in the Code of Criminal Procedure with the term "community supervision." Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2, 1993 Tex.Gen.Laws 3586, 3717 (codified at Tex.Code Crim.P.Ann. art. 42.12., § 2 (Vernon Supp.1995)). A defendant who was placed on probation or who received deferred adjudication probation before September 1, 1993, is nevertheless considered to have previously been placed on community supervision. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 5.02, 1993 Tex.Gen.Laws 3586, 3743. Therefore, we refer to appellant's deferred adjudication probation in this opinion as community supervision.

on bond for nine years without violating any laws. Schaffer testified that Evans was present during the negotiations and did not oppose Judge Lanford's proposal that appellant receive early termination of his community supervision. However, because of the State's official policy, the deferred adjudication order showed that the State and appellant did not reach an agreement on punishment.

Judge Lanford and Evans also testified about their interpretation of the plea discussions. Judge Lanford's account was consistent with Schaffer's except that Lanford denied that he promised to terminate appellant's community supervision early. Judge Lanford testified that he only told appellant that he would *consider* a motion for early termination of community supervision if appellant did not violate any laws for one year. Evans disagreed with both Schaffer's and Lanford's account of the plea negotiations. Evans testified that the parties never entered a formal agreement on punishment because of the official policy that prohibited a prosecutor from recommending community supervision for murder. However, Evans stated that he knew that appellant pleaded no-contest based upon an understanding that Judge Lanford would sentence appellant to 10-years community supervision, and Evans nevertheless agreed to waive the State's right to a jury trial on appellant's case. Evans testified that he never told Lanford that he would be open to early termination of community supervision. Further, he stated that Judge Lanford did not say that he would consider early termination until after appellant had already entered his plea.

After the parties concluded their discussions in chambers, Schaffer relayed his interpretation of the proposed agreement to appellant. Appellant entered a no-contest plea based upon what Schaffer told him. Appellant successfully served his community supervision for one year, but Schaffer was unable to obtain early termination of appellant's community supervision from the court. As noted, the State filed a motion to adjudicate appellant's guilt in 1994, over three years after appellant entered his no-contest plea.

At the conclusion of the habeas corpus hearing, the trial court made the following findings:

> There seems to be no dispute that Judge Lanford represented that he would, in fact, give Mr. Spicuzza ten years deferred adjudication probation and allow him to plead no contest to the allegations of murder. The court finds that Judge Lanford did not expressly make a representation that he would early terminate Mr. Spicuzza in those words; in the sense that he did not say specifically "I will early terminate you in one year." However, the court finds that Judge Lanford's testimony, the statements that he recounted giving defense counsel, were such that defense counsel could reasonably interpret those comments and statements as, something to the effect of, you file your motion, after one year, if you have stayed out of trouble, then I intend to terminate your probation, maybe one year, maybe one year and six months. I think Judge Lanford all but said that was his intent and that he feels that he communicated that adequately to Mr. Schaffer. The words "consider" and "entertain" are sometimes words of art; that you will entertain a motion to early terminate to mean you openly consider it and reject it or it can mean that you will grant it if it is filed. I think that the statements and the testimony by Judge Lanford show that that is, in fact, what Mr. Schaffer believed Judge Lanford was saying. And the testimony of Mr. Spicuzza bears out that that was communicated to him by his defense counsel.

> . . . . .

> The court further finds that the plea bargain or the inducement was never fulfilled; that once Judge Lanford left the bench, it could not be fulfilled. The law provides two alternatives: either specific performance or that the bargain be set aside. This court will not entertain specific performance. I do not intend to early terminate Mr. Spicuzza. Therefore, the indictment is pending against Mr. Spicuzza.

The trial court set aside appellant's plea, reinstated the indictment, and set the case for trial.

## II. Analysis

In his sole point of error, appellant argues that the State is bound by Judge Lanford's promise to terminate appellant's deferred adjudication early. Although the court found that Judge Lanford did not make an express promise to terminate appellant's community supervision within one year, it found that Judge Lanford implicitly promised to terminate appellant's community supervision early if appellant did not commit additional violations of the law. Since neither party questions whether the evidence is sufficient to support this finding, we assume for the purposes of this opinion that Judge Lanford promised to terminate appellant's community supervision early.

The trial court did not find that Evans agreed to or knew about Judge Lanford's promise regarding early termination of appellant's community supervision. Further, Evans testified at the hearing that he did not participate in any discussions regarding early termination, nor did he learn of Judge Lanford's intentions until after appellant had already entered his plea. Appellant contends that Judge Lanford's promise, and appellant's entry of his plea in reliance on that promise, created a specifically enforceable plea agreement regardless of whether Evans was a party to the early termination agreement. Thus, the issue before this Court is whether a defendant may demand *specific performance* of a plea agreement between himself and the trial court if the prosecutor is not a party to the agreement.

■■■ Plea bargaining involves a preconviction bargain between the prosecutor and the defendant where the prosecutor makes a concession in exchange for the defendant's promise to plead guilty or nolo contendere. *Perkins v. Third Court of Appeals,* 738 S.W.2d 276, 282 (Tex.Crim.App.1987); *Ex parte Williams,* 637 S.W.2d 943, 947 (Tex. Crim.App.1982), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1336 (1983). It requires "an offer by an authorized agent of the State to recommend a sentence or to make some other concession, such as a reduced charge in exchange for a specified plea by the defendant." *Tate v. State,* 834 S.W.2d 566, 572 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Wayne v. State,* 756 S.W.2d 724, 728 (Tex.Crim.App.1988)). In regard to the State's recommendation on punishment, a plea bargain contract is not enforceable until the trial judge approves the agreement in open court. *Tate,* 834 S.W.2d at 572; *Wayne,* 756 S.W.2d at 728.

Federal law prohibits a trial court from making a plea bargain offer to a defendant. *United States v. Adams,* 634 F.2d 830, 834 n. 2 (5th Cir.1981); FED.R.CRIM.P. 11(e). Although Texas trial judges are not expressly prohibited by law from participating in a plea bargaining session, the Court of Criminal Appeals has suggested that "a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant."[2]

■■■ Appellant contends that due process prohibited the trial court from refusing to honor Judge Lanford's promise because appellant relied upon that promise in entering his plea, and Judge Lanford acted on behalf of the State. Although contractual principles apply to plea bargains, other considerations, *i.e.,* due process, sometimes mandate a different result than required by a blind application of contract law. *See Ex parte Adkins,* 767 S.W.2d 809, 810 (Tex.Crim. App.1989). For example, if part of the consideration that induced the defendant to enter the plea bargain agreement with the prosecutor fails because the law prohibits the benefit promised to the defendant, fundamental fairness requires that the plea be withdrawn. *See, eg., Heath v. State,* 817 S.W.2d 335, 337 (Tex.Crim.App.1991) (since defendant was not eligible for court-ordered probation for offense of aggravated robbery, the only remedy was to order defendant's plea of guilty withdrawn and return the par-

---

2. *Perkins,* 738 S.W.2d at 282 (citing *Ex parte Williams,* 704 S.W.2d 773, 777 n. 6 (Tex.Crim. App.1986)); *see also State ex. rel. Bryan v. McDonald,* 662 S.W.2d 5, 8–9 (Tex.Crim.App.1983); *Ex parte Shuflin,* 528 S.W.2d 610, 616–17 (Tex. Crim.App.1975); *Kincaid v. State,* 500 S.W.2d 487, 490–91 (Tex.Crim.App.1973); *Coleman v. State,* 756 S.W.2d 347, 349 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

ties to their original positions); *Ex parte Huerta*, 692 S.W.2d 681, 681–82 (Tex.Crim. App.1985) (plea withdrawn because specific enforcement of plea bargain, the running of a state prison sentence concurrent with a federal sentence, was beyond the power of state authorities). However, we find no case that requires specific performance of a plea agreement between a defendant and the trial court if the prosecutor was not a party to the agreement.

■ Appellant cites *Fitzgerald v. Estelle*, 505 F.2d 1334, 1337 (5th Cir.1974), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975), and *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex.Crim.App.1978), for the proposition that the trial court was required to terminate appellant's community supervision early because Judge Lanford's actions constituted state action that invoked the protections of the due process clause. We do not find these cases dispositive because they are not plea bargaining cases.[3]

■ When a prosecutor breaches its promise to a defendant with respect to an executed plea agreement, the United States Supreme Court has held that due process mandates that the conviction cannot stand. *Mabry v. Johnson*, 467 U.S. 504, 510, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 259–64, 92 S.Ct. 495, 497–99, 30 L.Ed.2d 427 (1971). The defendant is entitled either to specific performance or withdrawal of his plea. *Id.* In *Santobello*, the case was returned to the state court to determine which remedy was appropriate under the facts of that case. 404 U.S. at 264, 92 S.Ct. at 499. Texas law prefers specific performance of a plea agreement over withdrawal of the plea unless the agreement cannot be enforced. *Perkins*, 738 S.W.2d at 283. We conclude that *Santobello* and *Perkins* do not require early termination in this case because the trial court in this case did not find that the prosecutor agreed

to Judge Lanford's alleged promise of early termination. Further, we find inapplicable every other case that appellant cites in his brief to support his argument that the trial court was bound to terminate his community supervision early. Appellant cites no case where a court has specifically enforced a promise that was not agreed to by both the prosecutor and defendant.

■ Appellant contends that fundamental fairness requires that his community supervision be terminated early because appellant served a substantial amount of his sentence pursuant his plea of nolo contendere. *See Gibson v. State*, 803 S.W.2d 316, 318 (Tex. Crim.App.1991) (when prosecutor refused to honor its promise pursuant to plea agreement, defendant was entitled to have agreement specifically enforced since he had already served substantial portion of his sentence under a guilty plea). However, the Court of Criminal Appeals has considered the fairness to both parties when deciding whether a plea agreement should be specifically enforced. For example, the "tenor of the mutual obligation" between the parties requires that a defendant's plea be withdrawn rather than specifically enforced if the consideration that induced the prosecutor to enter a plea agreement with the defendant fails because the law prohibits the benefit promised to the prosecutor. *Ex parte Sims*, 868 S.W.2d 803, 804 (Tex.Crim.App.1993) (plea withdrawn because State bargained for possibility of consecutive sentences for offenses arising out of the same criminal episode prosecuted in a single action); *Adkins*, 767 S.W.2d at 810–11 (plea withdrawn when parties had agreed that, in exchange for defendant's guilty plea as a party to murder, affirmative finding of deadly weapon would be entered in judgment).

We conclude that it would not be fair to bind the district attorney to an agreement that it did not enter with appellant. The

---

**3.** Both cases merely addressed the issue of when a defendant satisfied the state action requirement of federal due process when proving that retained counsel's performance was ineffective. *Fitzgerald*, 505 F.2d at 1336–38; *Ewing*, 570 S.W.2d at 944–45. Since *Fitzgerald* and *Ewing*, several cases have recognized that there is no longer a distinction between retained and ap-

pointed counsel when considering a claim for ineffective assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 343–44, 100 S.Ct. 1708, 1715–16, 64 L.Ed.2d 333 (1980); *Hardin v. Wainwright*, 678 F.2d 589, 592–93 (5th Cir.1982); *Hurley v. State*, 606 S.W.2d 887, 889–90 (Tex. Crim.App. [Panel Op.] 1980).

**386**

only fair disposition to the dilemma in this case was for the trial court to refrain from acting on the State's motion to adjudicate guilt and to place the parties in the positions that they were in before appellant entered his plea. That is exactly what the trial court did in this case.

We overrule appellant's sole point of error.

We affirm the judgment of the trial court.

MIRABAL, J., concurring.

MIRABAL, Justice, concurring.

I concur, noting that even if Judge Lanford was still on the bench, in my opinion appellant would not be entitled to the specific performance he seeks. At the time of sentencing, Judge Lanford expressed his *then-current* intention to early terminate appellant's deferred adjudication if appellant did not violate any laws for one year. However, Judge Lanford retained the discretion to consider the motion for early termination when it would be filed in the future, and to rule on it in light of all the relevant circumstances *at that time.*

In my opinion, the trial court ruled correctly in this case.