

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00147-CR

THE STATE OF TEXAS, APPELLANT

V.

GERALD RAY BARROW, APPELLEE

On Appeal from the County Court
Hale County, Texas
Trial Court No. 2012C-427, Honorable Bill Coleman, Presiding

July 16, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

The State appeals an order granting appellee Gerald Barrow a new trial "in the interest of justice." Based on the record presented, we find the trial court abused its discretion, reverse its order and render an order denying Barrow's motion for new trial.

Background

An information of June 4, 2012, charged Barrow with assaulting Shirley White by striking her with his fist, causing bodily injury.[1]  At the time of the misdemeanor assault, Barrow and White were living together.[2]  In July 2012 they married.

Their altercation occurred at an unlicensed establishment in Plainview known as the Working Man's Club.  Shirley Barrow testified she was intoxicated, became angry with Barrow because of something she thought he said, and started their fight by hitting Barrow with a chair.  She also testified she had a knife and at one point turned out the lights.  Barrow, she said, "had to defend his way up out of there . . . ."

On cross-examination, Barrow's counsel Chris Pollard led Shirley Barrow through testimony reiterating that she was "drunk that night," had been drinking "basically straight alcohol," hit Barrow with a chair and had a knife.  Pollard's cross-examination also elicited the fact Shirley Barrow was scheduled to be in court "on a possession charge" the day after the incident.  Pollard next elicited testimony she had "some criminal history out of New Jersey," and had "done time in the pen."

Shirley Barrow's testimony also made clear she did not want Barrow prosecuted for the offense.  Cross-examining a police officer, Pollard had the officer read for the jury a written statement she gave the officer.  The entire statement read, "I had been drinking on May 1st.  One thing led to another.  I ended up in the hospital.  I don't want

---

[1] TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2013).  As charged the offense is a Class A misdemeanor punishable by confinement in jail for not more than one year and a fine not exceeding $4,000.  TEX. PENAL CODE ANN. § 12.21 (West 2011).

[2] The information alleged Barrow and White had a dating relationship as defined by Family Code section 71.0021.  TEX. FAMILY CODE ANN. § 71.0021 (West 2014).

to press charges on anyone.  Thank you."[3]  When Pollard asked Shirley Barrow what she wanted to happen to her husband at trial, she responded, "For him to be let go, . . . so we can go home."  Barrow did not testify at the guilt stage of trial.

The jury charge contained an abstract instruction on self-defense, but no application paragraph related to that defense.  The jury found Barrow guilty.  In the punishment phase, the State introduced evidence of Barrow's four prior convictions.  Barrow took the stand.  He gave a description of the altercation very similar to that his wife gave during her testimony.  He acknowledged his prior convictions.  He told the jury he had a job, had been employed there a year, and was "a good employee, punctual."  He said he had talked with his boss and "[h]e said he would work with me on work release."  He asked the jury to give him the chance to continue his work, telling them, "That job is my life line.  I have to take care of my wife."

Based on the verdict of the jury, the trial court imposed a sentence of a $1,200 fine and no term of confinement.

Barrow filed a notice of appeal which this court docketed as case number 07-13-00046-CR.[4]  The trial court appointed attorney Troy Bollinger to represent Barrow on appeal.  Bollinger filed a motion for new trial on Barrow's behalf and the trial court conducted an evidentiary hearing, at which Barrow and Shirley Barrow were the only witnesses.

---

[3] Other evidence showed her injuries as a black eye and a cut that required suturing.

[4] This appeal is abated pending further order of the court.  *See Barrow v. State,* No. 07-13-00046-CR, slip. op. at 2 (Tex. App.—Amarillo, May 14, 2013, per curiam order), *available at*: http://www.search.txcourts.gov/Case.aspx?cn=07-13-00046-CR.

The theme of Barrow's presentation at the new trial hearing was that his claim of self-defense would have been accepted by jurors if they had known more details of Shirley Barrow's criminal history, which included assaultive offenses. During the hearing, Bollinger told the trial court, "Additionally, the only defense in this case is self-defense. It's the only thing that was raised."

At the new trial hearing, Barrow testified he was aware of his wife's previous assault charge, and agreed with Bollinger that knowledge of the previous assault "would have been in your head when you see her coming at you with a knife."

The trial court granted Barrow a new trial, "in the interest of justice." The court's written order does not specify the ground for the court's ruling. Findings of fact and conclusions of law were prepared at the State's request.

Among other things, the trial court found that Shirley Barrow testified at the motion for new trial hearing that she had:

> [B]een convicted of numerous criminal offenses having been incarcerated in prison on several occasions. She testified to having been convicted for drug charges and on two occasions for assault. In one felony assault case she was sentenced to three years in the New Jersey State Penitentiary for stabbing her former husband.

In another finding of fact, the court found Pollard "did not request the criminal history of [Shirley Barrow]. Had he obtained her criminal history he could have shown to the jury that [she] had an extensive criminal history including a felony assault of a former husband with a knife."

4

Analysis

Sufficiency of the State's Briefing

Initially we take up Barrow's first cross-issue. In his argument in support of the cross-issue, Barrow asserts the State's brief is insufficient because its analysis does not contain citation to the reporter's record of the jury trial. The State's brief contains citations to the reporter's record of the motion for new trial hearing. At that hearing, it was Barrow's burden to prove a meritorious ground for a new trial. *See* TEX. R. APP. P. 21.9(a). And the outcome of that hearing is the subject of the State's appeal.

Barrow's argument also contains language asserting the State failed to preserve error. He argues the State limited its appellate challenge to the effectiveness of Pollard's representation, omitting argument of "the multiple grounds that the Trial Court used in its ruling." This is not a preservation issue but is more akin to a complaint regarding the manner in which the State has assigned error.

Barrow does not indicate what relief or penalty he seeks for the inadequacies he sees in the State's briefing. We have considered his arguments in our review of the appeal, but to the degree Barrow's first cross-issue requires disposition, it is overruled.

The State's Issue and Barrow's Second Cross-Issue

We turn to the State's single issue, in which it contends the trial court abused its discretion by granting Barrow's motion for new trial. Our discussion of this issue also will resolve Barrow's second cross-issue in which he argues the contrary.

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *State v. Herndon,* 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). The test for abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *Id.* at 907 (quoting *Howell v. State,* 175 S.W.3d 786, 792 (Tex. Crim. App. 2005)). While a trial court has discretion to grant a new trial "in the interest of justice" that discretion is not unfettered because "justice" means "in accordance with the law." *Id.* A trial court generally does not abuse its discretion by granting a new trial if the defendant (1) sets forth a specific and valid legal ground for relief in his motion, (2) points to evidence in the record (or sets forth evidence) that substantiates the same legal claim, and (3) shows prejudice under the harmless-error standards of the Rules of Appellate Procedure. *State v. Zalman*, 400 S.W.3d 590, 591 (Tex. Crim. App. 2013) (emphases omitted).

While the defendant need not establish reversible error as a matter of law, trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial. *Herndon,* 215 S.W.3d at 909. A trial court has no authority to grant a new trial unless the first proceeding was not in accordance with the law. *Id.* at 907. And it is an abuse of discretion to grant a new trial for a non-legal or legally invalid reason. *Id.* "A judge may not grant a new trial on mere sympathy, an inarticulate hunch, or simply because he believes the defendant received a raw deal or is innocent." *Zalman,* 400 S.W.3d at 593 (citing *Herndon,* 215 S.W.3d at 907). As the Court of Criminal Appeals recently reiterated, "There must be some legal basis underpinning the grant of a new trial, even if it is granted in the interest of justice." *State*

6

*v. Thomas,* No. PD-0121-13, 2014 Tex. Crim. App. LEXIS 591, at *11 (Tex. Crim. App. Apr. 16, 2014).

On appeal, Barrow argues the trial court's order was justified on two grounds,[5] "the failures of trial counsel"[6] and newly-discovered evidence.[7] Barrow asserts the record shows Pollard was ineffective in his representation of Barrow and evidence of Shirley Barrow's conviction for stabbing a former husband was not discovered until

---

[5] The State objected at the new trial hearing, arguing that ineffective assistance of counsel was not a ground stated in Barrow's motion. The objection was overruled, and the State does not raise it on appeal.

[6] The trial court's conclusions of law included those stating:

Mr. Pollard was not adequately prepared to defend the accused against the charges. Therefore, [Barrow] did not have the effective assistance of counsel necessary to protect his rights under the Sixth and Fourteenth Amendment to the Constitution.

It was my finding that [Barrow's] attorney, Mr. CHRISTIAN POLLARD, failed to adequately prepare for trial. His failure to investigate the alleged victim's criminal history prevented the jury from having pertinent and important information necessary to reach a fair verdict. In light of these findings, I granted [Barrow's] Motion for New Trial in the interest of justice.

[7] The trial court's conclusions of law also included this conclusion:

Article 40.001 Texas Code of Criminal Procedure directs, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Mr. BOLLINGER'S investigation into Ms. WHITE BARROW'S criminal history revealed that she had been convicted and sentenced to prison for stabbing her former husband. Had this significant evidence been introduced at trial it could have added credibility to the Defendant's claim of self defense. This evidence would tend to support Mr. BARROW'S claim that he feared for his safety when confronted by Ms. WHITE BARROW with a knife. Introduction of this evidence could certainly have had an impact on the Jury's deliberation and their resulting verdict.

Bollinger assumed appellate representation and therefore constitutes newly-discovered evidence. Evaluating the trial court's exercise of its discretion, we consider whether the court could have seen the evidence Barrow produced or pointed to as substantiating his claims of ineffective assistance and newly-discovered evidence. *Zalman,* 400 S.W.3d at 595.

*Ineffective Assistance of Counsel*

*Strickland v. Washington* presents the standard for ineffective assistance of counsel claims under the United States Constitution. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court in *Strickland* established a two-pronged test for analyzing a claim of ineffective assistance of counsel. The first prong requires a defendant to prove counsel made such serious errors that he did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. The defendant must show that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *Id.* at 689-90.

Under the second prong, an appellant must show that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The standard for judging prejudice requires the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

A strong presumption exists that counsel's conduct fell within a wide range of reasonable professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly rooted in the record. *Thompson v. State,* 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999).

Absent evidence of counsel's reasons for the challenged conduct, a reviewing court will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (applying same rule).

In his brief, Barrow argues Pollard committed various professional errors which may be summed up as failing to investigate the case adequately. He urges an investigation would have revealed Shirley Barrow's convictions for assaultive conduct, including one for stabbing a former husband, and would have revealed Barrow's sister-in-law as a witness to the fight at the Working Man's Club.[8]

The trial court did not hear an explanation by Pollard of his trial strategy.[9] *See Sanders v. State,* Nos. 01-03-00866-CR, 01-03-00867-CR, 2004 Tex. App. LEXIS 9965,

---

[8] Barrow's sister-in-law did not testify at the motion for new trial hearing. And the substance of her probable testimony does not otherwise appear in the record. Thus the trial court was not shown how she might have contributed to Barrow's defense.

[9] The trial court admitted an affidavit of Bollinger to which was attached an unsworn memorandum from Pollard. The entire substance of Pollard's memorandum stated:

1. I was appointed to represent Gerald Barrow. I met him once at my office and once at the courthouse in Tulia.

at *6 (Tex. App.—Houston [1st Dist.] Nov. 10, 2004, no pet.) (mem. op., not designated for publication) (also finding record silent as to counsel's trial strategy despite affidavit addressing other subjects). However, a review of the reporter's record indicates from opening statement through closing argument Pollard attempted to emphasize Shirley Barrow's desire that her husband not be prosecuted.

Neither side mentioned self-defense during voir dire or opening statement. With regard to the merits of the State's case, Pollard's brief opening statement contains only the following:

> Yeah, right. She did not want to prosecute this case. The reason we're here is because the prosecutor's office has decided to take up this case with an unwilling victim, and please keep that in mind.

As noted, throughout the State's case, Pollard highlighted that Shirley Barrow, shortly after the incident, decided she no longer desired to prosecute her initial complaint. She told the jury she wanted her husband "let go . . . so we can go home."

The charge was proposed by the State and contained an abstract self-defense instruction. But, as noted, it did not contain an application paragraph on self-defense and Barrow made no objection.

_____

2. On both occasions he was not forthcoming in providing any information as to what happened in the alleged incident.

3. Gerald was congenial thoughout (sic). But gave me no information about what happened in the alleged assault.

4. I do believe that I did question the alleged victim about her criminal history. I cannot be sure about this. I think I remember her saying that she had been in the penitentiary in New Jersey.

10

Pollard presented the following closing argument:

> May it please the Court, Counsel.
>
> Ladies and Gentlemen, why are we here today? We have an alleged victim that does not want to prosecute. It's—it's her head or body, whatever happened. She wants to go home today with [Barrow]. And she got up here and testified under oath that she's not scared of him; he's not forcing her to do anything; she's sitting here willingly in the courtroom.
>
> I'm sorry that you-guys had to get dragged into court today on this kind of a case. She admits she was drunk. She admits she started it. She had a knife. She hit him with a chair. She went out the window. And I don't know, those injuries could have been caused by that.
>
> Anyway, please give Shirley what she wants, and she does not want him prosecuted. She wants to go home with him today.
>
> Thank you.

On the evidence, Barrow might have argued self-defense, but nothing in the record supports a conclusion that the only constitutionally reasonable trial strategy available was that Barrow acted in self-defense. Counsel reasonably could have considered that, despite Shirley Barrow's testimony to her attack on her husband, a successful assertion of self-defense might have required Barrow to testify. And opened him to impeachment with his own considerable criminal history.

The same is true of the extent of Pollard's investigation of Shirley Barrow's criminal background. *Strickland* involved a claim that counsel was ineffective with regard to the investigation performed in preparation for the sentencing hearing in a death penalty case. 466 U.S. at 672-73. Specifically addressing counsel's duty to investigate, the Supreme Court held that decisions regarding the extent of investigation of a case are governed by the same standard of reasonableness that applies to other aspects of counsel's professional duty to the client. The Court stated, "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision

11

that makes particular investigations unnecessary." *Id.* at 691. From his cross-examination of Shirley Barrow at trial, it cannot be disputed that Pollard had made some investigation of her criminal history. In some manner, he acquired some level of knowledge she had a criminal history in New Jersey, and had served time in the penitentiary.[10] If, as Barrow asserts, Pollard's investigation of that matter ceased when he acquired the information he elicited from Shirley Barrow on the stand, a court evaluating his effectiveness regarding the investigation must determine whether his decision not to investigate further was reasonable. And without evidence of Pollard's reasons for such a decision, it is not possible for Barrow to overcome the strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way") (citation omitted).

In sum, the trial court did not have before it evidence of conduct by Pollard so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392. And, despite a hearing on the motion for new trial, the court did not have before it evidence of his reasons for focusing on urging the jury to honor Shirley Barrow's wishes rather than pursuing a claim of self-defense. Having before it no evidence of Pollard's reasons for defending Barrow as he did, the trial court could not properly have seen the record as demonstrating Pollard's representation of Barrow fell

---

[10] Barrow and his wife testified at the new trial hearing that they gave Pollard some information about her criminal history on the morning of trial. It appears also that Pollard acquired some information from the State's file. But the extent of his investigation cannot be ascertained from the record.

below the Sixth Amendment's reasonableness standard.[11]  To the extent the trial court granted Barrow a new trial in the interest of justice on the claimed ineffective assistance of Pollard, it abused its discretion.

### *Newly Discovered Evidence*

Barrow argues evidence of Shirley Barrow stabbing her former husband and being sentenced to prison was unknown by trial counsel but was discovered after trial by Bollinger.  Code of Criminal Procedure Article 40.001 provides, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."  TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006).  To meet the statute's materiality requirement, a defendant must show: (1) the evidence was unknown or unavailable to him at the time of trial; (2) his failure to discover or to obtain the evidence was not due to lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Keeter v. State,* 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002).  The requirement that the evidence assertedly requiring a new trial be discovered since trial has been called "the fundamental requirement" for granting a new trial on the ground of newly discovered evidence.  43A George E. Dix & John M. Schmolesky, TEX. PRAC., CRIMINAL PRACTICE AND PROCEDURE § 50.23 (3d ed. 2011) (citing *Tate v. State,* 834 S.W.2d 566, 571 (Tex.

---

[11] Because we find the trial court could not properly have concluded that Pollard's conduct of his defense of Barrow was unreasonable under prevailing professional norms, and thus met the first prong of the *Strickland* analysis, we do not address the evidence supporting a conclusion that but for Pollard's failure to investigate the case more thoroughly, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694 (second prong of test for ineffective assistance of counsel).

App.—Houston [14th Dist.] 1992, pet. refused)).  For the purpose of this determination, what is known to the defendant is known to his attorney and vice versa.  *Id.*  Barrow states in his brief "when [Shirley Barrow] came at him with a knife on the date of the offense," he knew of her prior conviction and penitentiary sentence for stabbing her former husband.  Thus, the trial court could not have determined the *Keeter* standard was met.  To the extent the trial court granted Barrow a new trial based on the claimed newly discovered evidence of Shirley Barrow's conviction and sentence for stabbing her former husband, it abused its discretion.

Finding the record does not contain evidence sustaining Barrow's legal claims of ineffective assistance of counsel and newly discovered evidence, we find the trial court abused its discretion in granting a new trial.  We sustain the State's issue on appeal and overrule Barrow's second cross-issue.

Conclusion

Having sustained the State's issue and overruled Barrow's two cross-issues we render an order denying Barrow's motion for new trial.

James T. Campbell
Justice

Do not publish.

Quinn, C.J., Concurring.
Pirtle, J., Dissenting.