NO. 07-00-0242-CR
NO. 07-00-0243-CR
NO. 07-00-0244-CR
NO. 07-00-0245-CR
NO. 07-00-0246-CR
NO. 07-00-0247-CR
NO. 07-00-0248-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 20, 2002

_____


KIZZIE RASHAWN WHITE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 242ND DISTRICT COURT OF SWISHER COUNTY;

NO. B3327-99-07-CR, B3328-99-07-CR, B3329-99-07-CR, B3330-99-07-CR,
B3336-99-07-CR, B3337-99-07-CR, B3338-99-07-CR;
HONORABLE ED SELF, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.


In the first three of these cases, trial court numbers B3327-99-07-CR, B3328-99-07-CR, and B3338-99-07-CR, appellant Kizzie Rashawn White was convicted of delivery of

a controlled substance. The offense charged in B3327 was alleged to have occurred on or about September 16, 1998, in B3328, the offense was alleged to have occurred on or about August 25, 1998, and in B3338, the offense was alleged to have occurred on or about August 5, 1998. In the next three cases, trial court numbers B3329-99-07-CR, B3330-99-07-CR, and B3336-99-07-CR, she was convicted of the offense of delivery of a controlled substance in a drug-free zone, and in the seventh case, trial court number B3337-99-07-CR, appellant was convicted of the offense of delivery of marijuana in a drug-free zone. The offense charged in B3329 was alleged to have occurred on or about September 24, 1998, the offense charged in B3330 was alleged to have occurred on or about July 21, 1998, and in B3336, the offense was alleged to have occurred on or about July 30, 1998. In B3337, the offense was alleged to have occurred on or about July 9, 1998. Upon the State's motion, all of the cases were consolidated and were tried together.

In the first two cases, appellant's punishment was assessed at seven years confinement in the Institutional Division of the Department of Criminal Justice and a fine of $1,000 in each case. In the third case, her punishment was assessed at one year confinement in a state jail facility and a fine of $1,000. In the three delivery of a controlled substance in a drug-free zone cases, the punishment was assessed at 25 years confinement in the penitentiary and a $5,000 fine in the first of those cases, and 10 years penal confinement and a $5,000 fine in each of the other two such cases. In the delivery of marijuana in a drug-free zone case, she was sentenced to two years in the penitentiary and a $500 fine. The trial judge ordered the sentences be served concurrently. Because

2

the cases were tried together, the parties have briefed and argued the cases together and we will, likewise, consider and discuss them together.

In pursuing her appeal, appellant raises five issues for our decision. In her first issue, she contends, "[t]he trial court erred by not allowing an offer of proof or bill of exception to be made for the appellate court." In her second issue, she contends she was denied her sixth and fourteenth federal amendment rights because she was denied impeachment and exculpatory evidence. In her third and fourth issues, she challenges the trial court's refusal to give her proper notice of a pretrial hearing and its refusal to grant her motion seeking a continuance. In her fifth and final issue, she argues "insufficiency of the enhancement evidence."

Reiterated, in her first issue, appellant claims the trial court erred in not allowing her to make an offer of proof or bill of exception for consideration by the court of appeals. Within this argument, as best we understand it, she complains the trial court erred in not sealing certain documents for "Appellate purposes," that may have been impeachment evidence against the State's main witness, undercover police officer Tom Coleman. The event giving rise to this complaint occurred during the hearing on appellant's motion for new trial. In her motion, appellant complained 1) the State failed to provide exculpatory information because it knew that the presiding trial judge had sealed information in another case that could impeach Coleman, 2) she was not provided Coleman's expense reports, 3) she was not informed that Eliga Kelly, another witness, had two felony charges pending

3

against him, and 4) she was not informed that Coleman had been suspended for a period of time. Additionally, during a hearing to disqualify trial judge Edward L. Self, the presiding judge at that hearing would not allow appellant to call Judge Self as a witness. Appellant argues this refusal was error because she simply wanted to find out if Judge Self "admitted to a personal bias or denied it."

In responding, the State argues that the records quashed were not relevant to a determination of Coleman's suspension. This is so, says the State, because appellant "was able to establish a time period where Coleman was placed on leave until the Cochran County charges were disposed of" and the nature of the records the court refused to seal and send up were adequately described in the record so that an appellate court could determine if they were relevant to the disposition of the issues presented in the new trial motion. Finally, the State argues that appellant did not make a threshold showing of improper conduct on the part of the judge prior to seeking to put the judge on the stand.

As we have noted, the offenses with which appellant was charged allegedly occurred during the time period of July 1998 through September 1998. At the new trial hearing, appellant argued that the records she sought were relevant to show that Coleman may have been unauthorized to act as an undercover agent during some of that time period because of charges pending against him in Cochran County.

Swisher County Sheriff Larry Stewart was subpoenaed to appear at the new trial hearing and to bring with him certain employment records he maintained for Coleman. The

4

records he brought included school records, certificates, recommendation letters, commendations, pre-employment drug and physical records, a form sent to Texas Educational Law Enforcement Standard Practices requesting Coleman's status as an officer, and a teletype showing some Cochran County charges against Coleman. However, he did not bring any time records for Coleman. Stewart testified that Coleman had been placed on vacation from August 10 to August 16 or 17, 1998, because Stewart had been notified of some charges pending against Coleman in Cochran County.

Jerry Massengill of the Amarillo Police Department brought Coleman's weekly reports and notes to the hearing. He believed that Coleman had taken vacation time around August 10-14, 1998, but he did not recall if Coleman had taken vacation time in May of 1998. Lieutenant Michael Charles Amos, who was with the Panhandle Narcotic Trafficking Task Force, averred that Coleman worked under his supervision. He said that he first learned about the Cochran County charges pending against Coleman in August 1998. At that time, Coleman was sent back to Sheriff Stewart and he took vacation time for approximately seven to ten days. Amos was later informed the matter was resolved and Coleman was given a polygraph test.

The trial court granted appellant's request for the teletype regarding the Cochran County charges and for the records showing Coleman's vacation time in 1998. However, he granted the State's motion to quash appellant's subpoena with respect to everything else. At that time, appellant made her request that the remainder of the items be sealed

5

and made a part of the record for appellate purposes.  That request was denied.  Hence, appellant's first issue.

First, we need to determine if appellant has properly preserved her complaint.  In relevant part, Texas Rule of Evidence 103 provides:

> (a) **Effect of Erroneous Ruling.**  Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> \* \* \*
>
> (2) *Offer of Proof.*  In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which the question was asked.
>
> (b) **Record of Offer and Ruling**.  The offering party shall, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof.  The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon.  The court may, or at the request of a party shall, direct the making of an offer in question and answer form.

Tex. R. Evid. 103(a) and (b).  Rule of Appellate Procedure 33.2 further provides that to complain about a matter on appeal that does not otherwise appear in the record, a party must file a formal bill of exception.  Tex. R. App. P. 33.2[1]

---

[1]There is some authority that a formal bill of exception is the only means by which error may be preserved.  *See Southwest Country Enterprises, Inc. v. Lucky Lady Oil Co.,* 991 S.W.2d 490, 494-95 (Tex.App.--Fort Worth 1999, pet. denied).  If that is true, appellant failed to make such a formal bill of exception by complying with the requirements of Rule 33.2.  Nevertheless, we will assume for the sake of argument that an informal bill of exception or offer of proof is still permissible under the current Rules of Appellate Procedure.  See *also Spivey v. James*, 1 S.W.3d 380, 385 (Tex.App.--Texarkana 1999,

Thus, to preserve error in the exclusion of evidence, a party must make a record through a bill of exception, formal or informal, of the evidence the party desires admitted. *Richards v. Commission for Lawyer Discipline*, 33 S.W.3d 242, 252 (Tex.App.--Houston [14th Dist.] 2000, no pet.). It has been stated that "an informal bill of exception will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show." *Love v. State*, 861 S.W.2d 899, 901 (Tex.Crim.App. 1993). Specifically, an informal bill of exception preserves error if 1) an offer of proof is made before the court, the court reporter, and opposing counsel outside the presence of the jury; 2) it is preserved as a part of the reporter's record; and 3) it is made before the charge is read to the jury. *4M Linen & Uniform Supply Co., Inc. v. W. P. Ballard & Co., Inc.,* 793 S.W.2d 320, 323 (Tex.App.--Houston [1st Dist.] 1990, writ denied). For example, it has been held that a bench conference held outside the presence of the jury that apprised the trial court of the nature of the evidence and which was recorded by the court reporter was an acceptable informal offer of proof of excluded testimony and was sufficient to preserve error. *Sims v. Brackettl,* 885 S.W.2d 450, 453 (Tex.App.--Corpus Christi 1994, writ denied*).* An informal offer need only provide some statement as to what the intended testimony would have been and its purpose. *Franklin v. State*, 986 S.W.2d 349, 353 (Tex. App.--Texarkana 1999), *rev'd on other grounds*, 12 S.W.3d 473 (Tex.Crim.App. 2000). However, no error is shown in the exclusion of evidence unless the record shows not only

pet. ref'd).

what the evidence would have been, but also its relevance. *Mollinedo v. Texas Employment Com'n*, 662 S.W.2d 739 (Tex.App.--Fort Worth 1983, writ ref'd n.r.e.).

The clerk's record shows that the subpoena *duces tecum* served on Stewart, Massengill, and Amos required them to bring the following documents to the hearing on the motion for new trial: 1) the employment records of Tom Coleman while employed at Swisher County, 2) the records filed by Coleman with the Panhandle Regional Narcotics Trafficking Task Force (weekly activity sheets), 3) the employment expense records of Coleman while he was working in Swisher County, 4) records regarding the teletype advising the Sheriff of Swisher County that a warrant was issued for Coleman's arrest, and 5) the records showing when Coleman took vacations in 1998. There was also testimony at the hearing as to the specific types of documents included in the employment records and the type of information included in the weekly activity sheets. Thus, the nature of the content of the documents is in the record and the trial court was apprised of it. Furthermore, when questioned by the court as to the relevance of the documents, the following explanation was provided:

> MR. SPRIGGS: Well, I think it may establish, Your Honor–Without me seeing, I really can't say, but they may establish something different that [sic] what's been given here today a [sic] far as Officer Coleman being suspended and when he took his vacation.
>
> He has given testimony during this actual trial that he knew about it in May, and he took a vacation at that point in time. That's why I think these records are Brady material.
>
> THE COURT: What difference does it make that he took a vacation?

8

MR. SPRIGGS:  Because I think the testimony from Lieutenant Amos will show that he took away Officer Coleman's authority to work undercover as soon as he found about [sic] about it.  We have a waiver he signed.

As we have noted, the trial court allowed appellant to have the teletype showing that Coleman had been charged with an offense in Cochran County, as well as the records showing when he took vacations in 1998.  Although appellant had the opportunity, she failed to show the relevance of the other documents she requested.  We do not believe the trial court's refusal to seal the documents and include them in the appellate record erroneously deprived appellant of the opportunity to make an offer of proof demonstrating error on the part of the trial court in its ruling.

Appellant further argues that she was erroneously deprived of an opportunity to examine the trial judge to show he had a disqualifying bias or material interest during the hearing on her motion to disqualify him.  The motion to recuse the trial judge was not made until after a verdict had been returned in the case, although it was filed before the hearing on appellant's motion for new trial.  The alleged material interest assertedly arose because the judge had *ex parte* sealed unidentified records that might have impeached Coleman, whose existence was discovered by defense counsel in another case.  Appellant argues that she should have been allowed to examine the trial judge as to his reasons for sealing those records.

A judge must testify about relevant facts within his personal knowledge when summoned to do so.  *Joachim v. Chambers*, 815 S.W.2d 234, 239 (Tex. 1991).  However,

9

in *Tate v. State*, 834 S.W.2d 566 (Tex.App.--Houston [1st Dist.] 1992, pet. ref'd), the court noted there is no Texas law establishing the conditions under which a judicial officer might be compelled to articulate his reasons for a decision in a particular case. In considering the question, the *Tate* court concluded that before a judge could be required to do so, a threshold showing should be made of improper conduct on the part of the judge justifying his being required to testify. *Id.* at 570. There is a strong presumption that the judge decided the case fairly and impartially. *Id*.

In this case, appellant's only argument is that she is entitled to know the reason the trial judge sealed records regarding Coleman. There was some evidence at the hearing that the sealed records may have related to Coleman's employment, although the prosecutor averred he did not know what was in the sealed records. The trial judge could reasonably have decided that the documents were not relevant to the case or cases in which they were sealed just as he did with respect to some of the Coleman documents to which access was refused and which we have previously discussed. We hold the hearing judge did not reversibly err in refusing to allow the examination of the trial judge. For the reasons we have discussed, we overrule appellant's first issue.

In her second issue, appellant asserts that the State withheld incriminating evidence on the only two eyewitnesses to the alleged charges. In that connection, she alleges that the evidence relates to the fact that Coleman may have been suspended from duty and that Eliga Kelly, the other eyewitness, used drugs and was involved in multiple cases that

10

were not charged against him. It is, of course, now axiomatic that the prosecution must provide a defendant any evidence in its possession that is favorable to the defendant and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Impeachment and exculpatory evidence is included within the types of evidence to which the *Brady* decision applies, and evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different if the evidence had been disclosed. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App. 2000). If the defendant received the evidence in time to use it effectively, it does not matter that it was not disclosed as soon as it might have been. *Givens v. State*, 749 S.W.2d 954, 957 (Tex.App.--Fort Worth 1988, pet. ref'd).

During trial, Kelly testified he had seen appellant deliver cocaine to Coleman on one occasion and was with him several more times when Coleman purchased drugs. Although he took Coleman to see drug dealers, he averred he did not know Coleman was an undercover agent. Kelly had been charged with delivery of a controlled substance, but had entered into a plea bargain and received ten years probation. A part of his plea bargain was that Kelly would testify against other individuals charged with delivery of drugs. Coleman also testified that Kelly smoked marijuana in front of him a couple of times.

Appellant argues that she did not receive this information about Coleman and Kelly prior to trial and if she had, she could have had witnesses available to testify about Kelly's

11

involvement in drug sales and "who was the initiator of the drug sales, if Mr. Kelly was receiving a share of the money, the nature of the relationship between Mr. Kelly and Officer Coleman, how much marijuana Mr. Kelly smoked, and the duties of an officer to prevent crimes . . . ." Thus, she asserts, she could have impeached Kelly with evidence about other charges against him and challenged his credibility because of his drug use.

However, Kelly himself admitted his involvement in drug sales by taking Coleman to drug dealers. He stated he had been charged with delivery of a controlled substance. Further, there was testimony by a State's witness that Kelly had smoked marijuana and Kelly conceded a conviction for driving while intoxicated. Kelly also admitted to a plea bargain arrangement by which he received probation on at least one charge against him in exchange for testimony against appellant. Moreover, appellant failed to identify any witnesses that could have testified to additional matters concerning Kelly and what testimony they might have given that was not merely cumulative of the impeachment actually accomplished by Kelly's cross-examination. Thus, there has been no showing of a reasonable probability that the outcome of the trial would have been different if appellant had known the facts prior to trial.

Appellant also alleges there were records sealed by the 242nd District Court concerning personnel and other files in the possession of Sheriff Stewart regarding Coleman that were part of the record in another case. Thus, appellant contends, even though the prosecutor did not have the documents in his possession, because Stewart was

acting on the government's behalf and other defense attorneys felt that this information could possibly impeach Coleman, the State had a duty to disclose the information. Appellant asserts she only learned about the existence of the records through the testimony of Amos.

However, the record reveals that appellant questioned Amos at trial in a hearing outside the presence of the jury as to whether he was familiar "with any type charges on Mr. Coleman regarding abuse of official capacity?" Appellant further queried if Coleman was ever suspended because of those allegations. Amos's response was that there was a five to ten-day period when Coleman was on leave and that his office had some records indicating when that occurred. Although appellant requested the trial court to order Amos to produce those records, the court overruled the motion. The court also overruled appellant's request that it require Amos to produce copies of the Task Force's cash expenditure reports. Although the trial court also ruled that appellant could not ask questions in front of the jury about the criminal charges against Coleman or that he was on leave for a period of time, appellant does not complain in this appeal about those rulings.

The State responds to appellant's contentions that it was not obligated to disclose the evidence of the dismissed Cochran County charges because of the rule that a witness may only be impeached by his conduct if it results in a criminal conviction and it is not

13

required to disclose evidence that would not be admissible at trial. In that regard, Rule 608(b) of the Rules of Evidence provides:

> (b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

Tex. R. Evid. 608(b). Thus, evidence that Coleman had been charged with an offense that did not result in a final conviction would not have been admissible, and there is no duty to turn over inadmissible evidence. *LaGrone v. State*, 942 S.W.2d 602, 615 (Tex.Crim. App.), *cert. denied,* 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997). Further, if a defendant actually knows the facts that might be withheld by a prosecutor in violation of the *Brady* rule, she is not entitled to relief because of the prosecution's failure to furnish the information. *State v. DeLeon*, 971 S.W.2d 701, 706 (Tex.App.--Amarillo 1998, pet. ref'd). Appellant's questions reveal that she already knew of the charges.

Additionally, even if appellant did not already have the information, to be entitled to relief, it was incumbent on her to show that the undisclosed information was favorable to her. *Hampton v. State*, 36 S.W.3d 921, 925 (Tex.App.--Fort Worth 2001, pet. ref'd). Appellant has made no showing that any evidence as to when Coleman may have taken vacation time, been on leave, or that the records about cash expenditures would have been favorable to her. Also, other than her assertions that attorneys in other cases told her that the evidence **might** be favorable to her, appellant has also failed to show a

14

reasonable basis for concluding that any other documents sealed by the court in other cases would have been favorable to her. Appellant's second issue is overruled.

Appellant argues her third and fourth issues together and we will likewise consider them together. In those issues, as we noted above, appellant complains that the trial court did not give her proper notice of the pretrial hearing in accordance with article 28.01 of the Code of Criminal Procedure and further, she argues, the trial court abused its discretion by denying her motion for continuance.

In pertinent part, article 28.01 provides:

> Sec. 2. When a criminal case is set for such pretrial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters . . . .

Tex. Code Crim. Proc. Ann. art. 28.01 § 2 (Vernon 1989). Article 29.03 of the Code of Criminal Procedure provides that a criminal matter may be continued on a written motion upon sufficient cause shown, but the continuance may only be for as long as is necessary. *Id.* art. 29.03.

Appellant acknowledges that a pretrial hearing was scheduled for March 22, 2000, but her counsel had to attend a matter in a district court in Potter County on the same day and, counsel says, the trial judge here was notified of that conflict. The hearing was

15

continued until March 24, 2000, but, counsel says, he was unable to attend because he was scheduled to attend a legal seminar in Houston for which he had already purchased tickets. Thereafter, the trial court denied all of appellant's pretrial motions because he deemed them waived. Appellant's counsel asserts he had filed a motion seeking a continuance of the pretrial hearing because he would be out of town. He again filed a motion seeking a continuance of the trial setting asserting he was not prepared to proceed because the pretrial motions had been denied without a hearing. The last motion for continuance was denied.

The record shows that counsel was appointed to represent appellant on February 17, 2000, after he was retained. Appellant's previous counsel had filed a number of pretrial motions. Appellant's present counsel filed a motion seeking a continuance from a March 8, 2000 hearing because he was attending a legal seminar in Dallas. That motion was granted and the hearing rescheduled for March 22, 2000. Counsel filed another motion for continuance from that hearing on the basis that he was involved in a criminal trial in Carson County. In his written order granting that motion, the trial court stated the case was set for pretrial hearing on March 24 and that appellant and her attorney were ordered to appear at that time. Another motion seeking a continuance of the March 24 hearing was filed but was denied. On March 24, appellant filed another motion for continuance of the April 4 trial setting because counsel needed to spend Monday and Tuesday of that week completing oral argument preparations for a court of appeals submission in another case. The trial court granted that motion for continuance of the trial

16

setting and reset the matter for trial on April 6, 2000. Appellant requested another continuance on April 6 on the basis that she could not proceed because she needed to have an expert appointed to investigate and test the drugs which she was charged with selling and also requested the trial court to hear the pretrial matters at a later date. She additionally filed an objection to the trial court's ruling that she had waived her pretrial motions.

After the jury trial, appellant filed a motion seeking reconsideration of her pretrial motions. In overruling that motion, the court entered an order reciting extensive fact findings with respect to the pretrial motions and the motion for continuance of the trial date. In our discussion, we will refer to the relevant findings in some detail with respect to the time after present counsel began to represent appellant:

\*   \*   \*

14. On February 3, 2000, the Motion of Daniel Garcia to be allowed to withdraw as counsel for defendant was granted;

15. On February 9, 2000, the case was called at a docket call for the trial week beginning February 15, 2000;

16. At such docket call, defendant appeared in person and announced to the Court that she had retained Ronald Spriggs as counsel;

17. At such docket call, the case was given number 6 for trial and written notice to such effect was given Ronald Spriggs;

18. On February 15, 2000, Ronald Spriggs appeared in person in the Court's chambers and presented to the Court the defendant's Motion for

17

Authorization to Expend Funds for Investigator and Motion to Proceed ExParte Concerning Appointment of Expert;

19. The motion for Authorization to Expend Funds for Investigator recites: "The Court has found Defendant to be indigent and without funds to hire counsel and has appointed Ronald T. Spriggs for representation in this cause" when, in fact, no such finding has ever been made by the Court, nor had any suggestion been made to the Court until that time that the defendant claimed to be indigent and Ronald T. Spriggs had been retained by defendant not appointed by the Court;

20. In counsel's presence, the court set a hearing on defendant's claim of indigency for 1:00 P.M. on March 8, 2000;

21. At such time, Ronald Spriggs made no suggestion to the court that such setting conflicted with any of his prior plans nor did he request a hearing on any other pretrial motions;

22. On February 25, 2000, Ronald Spriggs filed a Motion for Continuance of the hearing set for March 8th, reciting that "Mr. Spriggs, attorney, for defendant, will be attending a legal seminar in Dallas, Texas";

23. Such Motion was granted and the hearing was reset for 10:00 A.M. on March 22, 2000;

24. On March 20, 2000, Ronald Spriggs filed another Motion for Continuance requesting that the hearing set for March 22nd be continued, reciting that he "is involved in a criminal trial on [sic] the week of March 20, 2000, . . . in the 100th District Court Carson County";

25. On March 20, 2000, the Court granted such motion;

26. On the morning of March 22, 2000, the Court received a telephone call from the coordinator of the 181st District Court of Potter County, Texas, advising the Court that Ronald Spriggs was in the 181st District Court for a revocation hearing and would not be in this Court;

27. No showing was made to this Court that the revocation hearing in the 181st District Court was set prior to the setting in this court nor did Ronald Spriggs contact this Court in any manner advising that his setting in the 100th District Court had been completed;

18

28. On March 22, 2000, the case was called on a docket call for the trial week beginning April 4, 2000;

29. Counsel for defendant made no appearance at nor announcement for the docket call of March 22, 2000;

30. The notice of docket call clearly provides that hearings on pretrial matters will be conducted immediately after docket call;

31. As the case was number 1 for trial for the week beginning April 4, 2000, the Court entered an order that all pretrial matters will be determined at a hearing set for 1:30 P.M. on March 24, 2000 and ordered Ronald Spriggs to be personally present before the Court at such time and date;

32. March 24, 2000, was the only day available prior to the trial week for the Court to hear pretrial matters;

33. On March 23, 2000, Ronald Spriggs again filed a Motion for Continuance of the hearing set for March 24th, reciting "Mr. Spriggs, attorney for the defendant, will be attending a legal seminar in Houston, Texas";

34. After receipt of such Motion, on the same day, i.e. March 23, 2000, the Court denied such Motion for Continuance and sent a copy of the written order denying the Motion to Ronald Spriggs;

35. On the morning of March 23rd, prior to 10:55 A.M., and prior to the time he left for Houston, the Court had a telephone conversation with Ronald Spriggs and personally advised him that the hearing set for March 24, 2000, was the only time the court had to consider pretrial Motions;

36. Although the Court had denied the Motion to Continue the hearing set for March 24th, and had ordered Ronald Spriggs to personally appear before the Court at 1:30 P.M. on March 24, 2000, Ronald Spriggs intentionally disregarded the order of the Court and did not appear at such time;

37. On March 24, 2000, at 4:24 P.M., Ronald Spriggs again filed a Motion for Continuance of the trial setting for 10:00 A.M. on April 4, 2000, reciting a conflict for April 5, 2000, for oral arguments in a civil case before the Court of Appeals;

38. The Court granted such Motion in so far as it applied to April 4th and 5th and reset the trial of the case for 9:00 A.M. on April 6, 2000; and

39. The Motion for Reconsideration recites that the Court has denied the Pretrial Motions when, in fact, such Motions have been waived.

Appellant argues that when the trial court reset the March 22, 2000 hearing to March 24, 2000, it did not give him the requisite ten days notice for a pretrial hearing. We will not reiterate the chronological history set out above, but the purpose of article 28.01 is to give the defendant not less than ten days within which to raise any preliminary matters to be heard in a pretrial hearing. In that connection, we note that appellant has not claimed there were any motions she was denied the opportunity to file because of the continuance which she sought and obtained. Moreover, whether to hold a pretrial hearing at all is within the discretion of the trial court, and appellant has failed to show she was prejudiced by the March 24 setting. *See Smith v. State*, 468 S.W.2d 828, 830 (Tex.Crim.App. 1971).

The granting or denial of a motion for the continuance of a trial setting lies within the discretion of the trial court. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App. 1995). To find an abuse of discretion in the failure to grant a motion for continuance, there must be a showing that the defendant was prejudiced by her counsel's lack of preparation time. *Id.* It is not enough to simply assert an inability to adequately prepare a defense, but a specific prejudice such as unfair surprise, an inability to effectively cross-examine, or crucial testimony that would have been given by potential witnesses must be shown. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997). Appellant's complaints here are that the continuance

20

was necessary inasmuch as she was not prepared to go to trial because the pretrial motions had been denied without a hearing and she would be forced to trial without information she needed for her counsel to be effective.

Initially, we note that pretrial motions can be waived by a failure to appear at a scheduled pretrial hearing. *Whitehead v. State*, 710 S.W.2d 645, 657 (Tex.App.-- Beaumont 1986), *rev'd on other grounds*, 745 S.W.2d 374 (Tex.Crim.App. 1988).[2] Although in her brief, appellant lists some 15 pretrial motions she filed, she does not specify which of those motions would have provided her with information she needed for trial and by failing to do so, she has not made the required showing of specific prejudice.

However, because the motion for authorization to expend expert funds for an investigation is the one she relied on in contesting the trial court's ruling at the trial level, we will, therefore, assume arguendo that is the motion which, appellant contends, would have provided her information without which she was specifically prejudiced. Appellant claimed she needed an expert appointed to test the drugs which she was charged with selling to an undercover agent. This was necessary, she argues, because it was her theory that the agent purchased the drugs so he could be credited with doing a good job and in order to convict her. Appellant alleges that the expert could have tested the drugs to determine what kind of chemical was in those drugs and whether all of the drugs

---

[2]The *Whitehead* case involved waiver of a motion to transfer venue which has been held to be a motion that is not subject to article 28.01. *See Faulder v. State*, 745 S.W.2d 327, 328 (Tex.Crim.App. 1987), *cert. denied*, 519 U.S. 995, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996).

21

reported to have been purchased at different times had the same chemical composition. She also asserts that an investigator was needed to delve into the undercover agent's background and also to talk to possible witnesses.

Appellant theorizes that the undercover agent who, she asserts, actually purchased the drugs from another source, particularly wanted to see her convicted of this crime, although she was innocent. However, there is nothing in the record showing a motive or reason why Coleman would want appellant convicted as opposed to the person who allegedly sold him the drugs. Further, appellant failed to specify what background information the investigator could reasonably be expected to find that would impeach her. She also fails to specify the type of crucial witness or additional sources of testimony that could reasonably be expected to be located by a state-funded investigator. For example, this record indicates that appellant knew prior to trial that Coleman had been charged with a crime and that the charges had later been dismissed.

Additionally, to be entitled to a state-funded expert chemist or investigator, appellant must have established that she was indigent. Appellant was indicted on July 20, 1999, and appears to have been represented by counsel without any indication of indigency. When her current counsel was substituted for her initial lawyer, the record shows that he was retained. Shortly after the substitution, counsel attempted to have the trial judge sign an order stating that appellant was indigent and that he had been appointed to represent her. Inasmuch as appellant had not been found to be indigent at the time, the trial judge

set a hearing on the question of her indigency. However, appellant's counsel never appeared for any of the scheduled hearings and on multiple occasions requested continuances, even though the case had been set for trial on its merits and the trial court had notified him that it had no other available dates to hear the indigency matter prior to the trial date. In appellant's continuance motion, with respect to the April 4, 2000 trial setting, appellant's counsel did not contend that he would be ineffective if a pretrial hearing was not held but, rather, only asserted that a "pretrial hearing would aid in the resolution of this case." The trial court granted that motion for continuation to the extent that the trial was reset for April 6, 2000. It was on the continued date that appellant first asserted that her representation would be inadequate if the experts were not appointed.

In *Wright v. State*, 28 S.W.3d 526 (Tex.Crim.App. 2000), *cert. denied*, 531 U.S. 1128, 121 S.Ct.885, 148 L.Ed.2d 793 (2001), an analogous question was presented to the court. In that case, the trial court denied the defendant's request for a continuance to afford his defense expert an opportunity to review DNA analyses that had recently been developed by the State's experts. The defendant had failed to seek the appointment of a DNA expert for three months after being informed that DNA testing was being conducted by the State. When the motion was finally filed, the trial court granted the request and appointed the defense expert. En route to holding that the trial court did not abuse its discretion in denying the continuation, the appellate court noted that the appellant (defendant) had not established that he was actually prejudiced by the refusal to give him

23

additional time and, even if he could point to some specific prejudice, he would not be allowed to profit from his own delay in acting. *Id*. at 533.

Likewise, in this case, there is nothing to show that the trial court would not have granted the motion for the appointment of an expert had a proper showing been made. Additionally, appellant never timely sought a ruling as to her indigent status and should not be allowed to profit from her failure to do so. The trial court did not abuse its discretion in this regard, and appellant's third and fourth issues are overruled.

In her fifth and final issue, appellant challenges the legal and factual sufficiency of the evidence to support the enhancement paragraphs in the cases in which she was convicted of delivery in a drug-free zone. The standards by which those challenges are determined are now so well established as to be axiomatic, and their reiteration is not required. Suffice it to say that the legal sufficiency standards we apply are those explicated in *Jackson v. Virginia,* 443 U.S. 307, 319-20*,* 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and its state progeny. The factual sufficiency standards we apply are those explicated in *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App. 1996) and its progeny. We do note, additionally, that the sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge. *Young v. State*, 14 S.W.3d 748, 750 (Tex.Crim.App. 2000).

Trial Court Cause Number #B3329-99-07-CR

24

In this case, appellant was charged with intentionally and knowingly delivering a controlled substance on or about September 24, 1998, in an amount of one gram or more but less than four grams and the offense was committed "within 1,000 feet of a playground, to-wit: the Connor Park in Tulia, Texas . . . ." The punishment for a second degree felony is enhanced to a first degree felony range if it is shown that the offense was committed "in, on, or within 1,000 feet of premises owned, rented, or leased by an institution of higher learning or a playground . . . ." Tex. Health & Safety Code Ann. § 481.134(b)(1) (Vernon Supp. 2002). A playground is defined as any outdoor facility that is not on the premises of a school and that is intended for recreation, is open to the public, and contains three or more separate apparatus intended for the recreation of children, such as slides, swing sets, and teeterboards. *Id*. (a)(3).

Coleman testified at the guilt-innocence phase of the trial that, on that date, he purchased powder cocaine from appellant at 101 North Floyd Street. During the punishment hearing, Joyce Rogers testified that she had measured the distance from the center of the driveway at that address to Connor Park and it was 193 feet. She further averred that the park contained multiple slides, monkey bars, swings, a horseshoe pitching location, and a basketball goal. Several photographs were introduced of the park.

Appellant challenges the State's proof by arguing there was no evidence as to the size of the property on which the sale took place and that it was possible for part of an address to be within 1000 feet from the playground and parts of the same address to be

25

more than 1000 feet from the playground. She also posits that the slides, monkey bars, and swings were not separate apparatus and a horseshoe pitching location and basketball goals are not the type of playground items listed in the statute.

The name of the premises alone may be sufficient to raise a presumption that the location is a playground. *Young*, 14 S.W.3d at 754. Furthermore, the *Young* court found the evidence sufficient to show the offense considered there occurred within 1,000 feet of a school, even though there was no evidence showing the school actually existed at the time of the offense. In this case, appellant did not ask if the park was in existence at the time of the incident and there is nothing in the record indicating it was not in existence at that time or that it did not contain the apparatus described. One of the pictures introduced into evidence shows a large apparatus that may have combined both slides and monkey bars. There was evidence of a basketball court and separate slides as well that reasonably could be intended for the use of children. The witness testified at one point that there were at least ten different items used for children to play on. The jury could reasonably conclude from the photographs in evidence that the park was a public one.

Additionally, one of the photographs in evidence shows the area from the park to the North Floyd address. As the trier of fact, the jury could reasonably be able to tell the size of the park property by the showing of neighboring houses. From the evidence introduced, the jury could reasonably have concluded that the offense occurred within

26

1,000 feet of a playground, and any such conclusion would not have been against the overwhelming weight of the evidence.

Trial Court Cause Number B3336-99-07-CR

In this cause, appellant was indicted with delivery of a controlled substance on July 30, 1998, within 1,000 feet of real property owned by, rented, or leased to a school, namely Tulia Community Nursery Association Head Start. That offense is a state jail felony that could be enhanced to a third degree felony by proof that the offense occurred within 1,000 feet of any real property that is owned, rented, or leased to a school or a school board. Tex. Health & Safety Code Ann. § 481.134(d)(1) (Vernon Supp. 2002). During the guilt- innocence phase of the trial, Coleman testified he bought rock cocaine from appellant at 402 South El Paso Street. Joyce Rogers averred during the punishment phase of the trial that the distance between 402 South El Paso Street and the rear door of the Tulia Community Nursery Association Head Start was 277 feet. She also testified that the location was a school and that the school had possession of that property. A school is statutorily defined as a private or public elementary or secondary school or day-care center. *Id.* (a)(3)(5).

Once again, appellant argues that the measurements are only guesses because there is no evidence as to where the actual sale of the narcotics took place. Also, she posits, the State failed to prove that the school was actually in existence at the time the sale took place, the evidence did not show that it is the type of school defined by the

27

Health and Safety Code and, finally, because the witness only knew the school had possession of the premises and she did not know if the school owned or leased the property, the evidence was deficient in that regard.

We have already discussed the effect of an alleged failure to prove the school was in existence at the time of the offense in our discussion of a similar argument with regard to the park, and our disposition of that challenge is applicable here. State's Exhibit 10 is a photograph from the driveway of 402 South El Paso Street looking towards the school. Because the evidence shows the distance as 277 feet, with apparently only one house between the location from which the photograph was taken and the school, the jury could reasonably have concluded the offense occurred within 1,000 feet from the school. Moreover, as we previously stated, the name alone may be sufficient to raise a presumption that it is a private or public elementary or secondary school. *Young*, 14 S.W.3d at 754. Although the name of the school does not specifically state that it is an elementary or secondary school, the use of the word "nursery" in the name carries a reasonable connotation that it is not an institution of higher learning. Furthermore, the witness referred to the institution as a school. Additionally, the witness stated that the school was in possession of the premises. The evidence is sufficient to sustain this enhancement finding.

Trial Court Cause Number B3337-99-07-CR

28

In this case, appellant was charged with the delivery of marijuana on July 9, 1998, within 1,000 feet of the Conner Park playground. That offense is also a state jail felony, enhanced to a third degree felony if it occurred within 1,000 feet of a playground. Tex. Health & Safety Code Ann. § 481.134(b)(1) (Vernon Supp. 2002). Coleman testified in the first phase of the trial that appellant pulled alongside of him at **the** Allsup's store and sold him some marijuana. During the punishment hearing, Rogers testified that she went to the Allsup's store at 517 Southwest 2nd and measured the distance to Connor Street Park, which was 234 feet.

Although appellant addresses most of the same complaints to this charge that we have discussed and disposed of in prior paragraphs, she also contends in connection with this conviction that Coleman never actually testified as to the location of the Allsup's store where the offense took place. As we have noted, Coleman's testimony was that he pulled into "the" Allsup's store. Appellant did not cross-examine Rogers as to whether there was more than one Allsup's store in Tulia and presented nothing indicating there was more than one such store. Considering the relevant evidence, it is sufficient to justify the jury in reasonably concluding that there was only one such store and it was where the drug transaction took place. Thus, the evidence is sufficient to support this enhancement.

Trial Court Cause Number B3330-99-07-CR

In this cause, appellant was charged with selling a controlled substance on July 21, 1998, within 1,000 feet of real property owned by, rented, or leased to the Tulia Community

29

Nursery Association Head Start. The charged offense is a state jail felony that could be enhanced to a third degree felony upon a showing that the offense occurred within 1,000 feet of a school. Tex. Health & Safety Code Ann. § 481.134(d)(1) (Vernon Supp. 2002). Coleman testified he purchased rock cocaine from appellant on that date after he saw her on South El Paso Street. Rogers stated that she measured from the intersection of 5th and El Paso Street to the front door of the school, a distance of 184 feet. However, there was no testimony as to any specific address where Coleman met with appellant, and the State, with commendable candor, concedes that the evidence is insufficient to support the enhancement finding for this sentence. Therefore, appellant's fifth issue is sustained as far as the enhancement finding in this cause.

In summary, we overrule appellant's first, second, third, and fourth issues. Appellant's fifth issue is also overruled with the exception of that portion of the issue challenging the enhancement of the punishment in trial court cause No. B3330-99-07-CR. That portion of the issue is sustained and the punishment provision in trial court cause no. B3330-99-07-CR is reversed and remanded for a new trial on punishment alone. With that exception, the judgment of the trial court in each case is affirmed.


John T. Boyd
Chief Justice


Do not publish.