Opinion issued February 26, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00868-CV

__________


THOMAS M. SIMS, RAYMOND J. CAMPBELL, SUPERNOVA
FINANCIAL SERVICES CORPORATION, SUPERNOVA INVESTMENTS,
INC., AND DANIEL JOSEPH SHEA, Appellants


V.


PATRICIA HILL FITZPATRICK AND RICHARD GRAYSON GUION,
Appellees






On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2006-14287






O P I N I O N

 Appellants, Thomas M. Sims, Raymond J. Campbell, Supernova Financial
Services Corporation, Supernova Investments, Inc., and Daniel Joseph Shea,
challenge the trial court's judgment in favor of appellees, Patricia Hill Fitzpatrick and
Richard Grayson Guion, and the trial court's post-judgment order imposing sanctions
against appellants. Appellants present six issues for our review. They contend that
the trial court erred in allowing their previous attorneys to withdraw from
representing them, "striking a timely jury demand," not granting a new trial "when
the evidence was uncontroverted that [they] were entitled to a new trial," and
"imposing sua sponte sanctions without giving notice or the opportunity to be heard."
Appellants also contend that the "assigned judges abuse[d] their discretion in failing
to recuse and/or disqualify the [trial] court" and the trial court's "order sanctioning
[them] and their counsel [is] void as a matter of law as the motion for new trial was
overruled by operation of law and no timely post-judgment motion for sanctions was
on file." 

 We affirm in part and reverse and remand in part. 

Factual and Procedural Background

 In March 2006, Fitzpatrick and Guion filed separate suits against appellants,
asserting claims of fraud, breach of fiduciary duty, and breach of contract. After
Fitzpatrick's and Guion's suits were consolidated in December 2006, the trial court,
on April 20, 2007, entered a docket control order, setting the consolidated case for
trial on November 5, 2007. On May 4, 2007, Fitzpatrick and Guion filed their
seventh amended petition, the live pleading in this case. (1)

 On July 19, 2007, appellants' counsel, R. Scott Wolfrom and Tom Fillion, filed
a motion to withdraw, asserting that good cause existed to withdraw as they had
developed an incurable "conflict of interest" in continuing to represent appellants and
that it was "impossible for counsel to effectively communicate and provide legal
advice and representation" to appellants. In their motion, Wolfrom and Fillion stated
that they had advised appellants in writing of the conflict and the filing of the motion,
it was not known if appellants consented or objected to the motion, appellants had
been advised of their right to object to the motion, appellants had been "given notice
of the filing of [the] motion at their last known address," there were "no pending
deadlines as of the filing of [the] motion," the matter had been set for trial on
November 9, 2007, and appellants had been advised to retain separate attorneys for
the corporate appellants. On August 21, 2007, the trial court granted the motion to
withdraw and ordered that the corporate appellants have a new attorney file a notice
of appearance by September 13, 2007. The trial court further ordered that Wolfrom
and Fillion mail a copy of its order by certified mail to appellants' last known
addresses.

 Guion, on September 10, 2007, filed his motion for death penalty sanctions,
and, on September 14, 2007, Fitzpatrick filed her motion for death penalty sanctions. 
In their motions, Guion and Fitzpatrick alleged that appellants had resisted their
discovery attempts, appellants had refused to comply "with numerous" court orders
compelling discovery, and Guion had already moved for and obtained monetary and
discovery sanctions related to appellants' discovery abuse. Fitzpatrick and Guion
further complained that they had attempted to depose various individual defendants,
including Campbell, and that Campbell had delayed by having his counsel withdraw. 
Fitzpatrick noted that the trial court had previously ordered appellants to respond to
discovery, imposed monetary sanctions related to appellants' refusal to respond to
discovery, and prohibited appellants from conducting their own discovery as a
sanction for discovery abuse. In support of her motion, Fitzpatrick attached an
affidavit from Guion's counsel, in which he testified that appellants had intentionally
and repeatedly abused the discovery process, filed bankruptcy proceedings to stall
discovery, filed frivolous objections to discovery, and had never complied with prior
discovery orders. Guion's counsel attached to his motion the trial court's prior
discovery orders dated February 16, 2007, March 23, 2007, and July 12, 2007. 

 On September 14 and September 25, 2007, the trial court granted Guion's and
Fitzpatrick's motion for death penalty sanctions, striking appellants' pleadings for
their abuse of the discovery process and entering judgment as to liability in
Fitzpatrick's and Guion's favor. On September 24, 2007, more than 30 days before
trial, appellants served their jury demand on Fitpatrick and Guion. The jury demand
was received and file-stamped by the clerk on September 25, 2007. Also on
September 25, 2007, after the trial court entered judgment in favor of Fitzpatrick, it
set a hearing on damages for October 3, 2007. Guion, on September 25, 2007, then
served appellants with a notice of the October 3, 2007 damages hearing. (2) 

 Appellants, on September 28, 2007, filed a verified motion for continuance,
seeking to continue the October 3, 2007 damages hearing to November 5, 2007, the
date the case had been previously set for trial. As noted by appellants, this had been
the "original setting" in place before the trial court unilaterally advanced the damages
hearing date. Appellants noted that they had made a written demand for a jury trial,
and they asserted that they needed a continuance so that their new counsel could
consult with them and prepare for trial. In support of their motion, appellants
attached an affidavit from their new counsel, Shea, in which Shea testified that he had
been retained on September 17, 2007 and that another attorney who had been retained
by appellants to appear on September 14, 2007 had failed to do so. Shea further
testified that he had been able to conduct "a limited review" of the case file, the case
file from prior counsel was in disarray, the case had a complex history, and he needed
90 days to adequately prepare. 

 On October 3, 2007, the trial court denied appellants' motion for continuance,
ruled that appellants' jury demand was untimely, and conducted a bench trial on
damages. On October 11, 2007, the trial court entered a "final judgment" and
awarded as damages $425,000 to Guion and $888,000 to Fitzpatrick, plus interest.

 Appellants, on November 9, 2007, filed a new trial motion, in which they
argued that their timely jury demand had been denied, they had been denied due
process, the trial court had granted excessive sanctions against them, the trial court
had not complied with Texas Rule of Civil Procedure 10 in allowing their prior
counsel to withdraw, and the trial court erred in denying their motion for continuance. 
Appellants set their new trial motion for hearing on December 21, 2007. Appellants
attached to their new trial motion the affidavit of Campbell, in which he testified that
the facts set forth in the motion were true and correct.

 At a hearing on November 16, 2007, the trial court reset the new trial motion
hearing to November 30, 2007. Appellants then filed a "verified motion for
continuance," seeking to again return the new trial motion hearing to December 21,
2007. Appellants attached the affidavits of Sims, Campbell, and Shea. Sims and
Campbell testified that they had previously committed to appear on December 21,
2007 to offer evidence in support of the new trial motion and that they could not
appear on November 30, 2007. Shea also testified that he could not adequately
prepare for an evidentiary hearing scheduled for November 30, 2007. 

 On November 21, 2007, at a hearing on appellants' motion for continuance, the
trial court warned Shea that if appellants did not appear to offer testimony in support
of their new trial motion, the trial court would hold it against both Shea and
appellants. Shea represented that his clients would appear to testify that their prior
lawyers did not comply with Texas Rule of Civil Procedure 10 in withdrawing and
that their prior counsel caused the discovery problems. The trial court granted the
continuance, but repeated its warnings that Shea would face monetary sanctions if
appellants failed to appear at the requested evidentiary new trial hearing. 

 Despite the trial court's warnings, at the new trial hearing on December 14,
2007, (3) appellants passed the evidentiary hearing on their new trial motion. After the
trial court denied the new trial motion, Fitzpatrick and Guion then explained to the
trial court that, in preparation for appellants' requested evidentiary hearing, they had
subpoenaed appellants' prior trial counsel and had expended time in preparing for the
hearing. Fitzpatrick and Guion argued that sanctions were appropriate to account for
their time and the time of appellants' prior trial counsel. Wolfrom and Fillion,
appellants' prior counsel, who were in the courtroom, represented that they had spent
ten hours and five and one-half hours respectively preparing for the hearing. Derrick
Saulsberry, another lawyer who had been subpoenaed to appear at the hearing,
testified that he spent approximately two hours preparing for the hearing. After
finding that Fillion, Wolfrom, and Saulsberry "probably charge[d] $200 or $300 an
hour," the trial court ruled that appellants and Shea should be jointly and severally
liable for sanctions to Saulsberry for $200, Fillion for $550, and Wolfrom for $1,000. 
 On December 20, 2007, Fitzpatrick and Guion filed a joint motion for
sanctions, repeating their assertions that appellants' efforts to obtain an evidentiary
hearing on their new trial motion had been a "preconceived plan to cause delay and
subterfuge." Fitzpatrick and Guion requested that Shea and appellants be ordered to
pay them $3,360 and $5,583 respectively for attorney's fees and costs expended in
preparing for the evidentiary hearing, and they attached affidavits from their counsel
to support these amounts. Wolfrom and Fillion also attached affidavits stating that
they had been subpoenaed to appear at the hearing, they had not engaged in any
conduct warranting discovery sanctions, and appellants had been notified of
obligations relating to discovery and their withdrawal. Wolfrom testified that he
spent ten hours preparing for the hearing and his hourly rate was $250. Fillion
testified that he spent five hours preparing for the hearing and his hourly rate was
$250. Saulsberry also testified he had been subpoenaed to appear at the hearing on
the new trial motion, he never represented appellants, he spent two hours preparing
for the hearing, and his hourly rate was $250.

 The trial court, on December 26, 2007, entered an "order denying [appellants']
motion for new trial and imposing sanctions for wasted attorney witnesses time." The
trial court stated that "[b]ecause [appellants] represented to the court and to opposing
counsel that [they] would give testimony implicating their previous attorneys in
malpractice and because [appellants'] motion for new trial was based in large part on
alleged deficiencies in prior counsel's representation, three attorneys who formerly
represented [appellants] were subpoenaed to testify in response to the alleged
expected testimony of [appellants]." The trial court further stated that appellants
failed to appear in person at the new trial hearing, no testimony was offered,
appellants' new trial motion was denied, and appellants and their attorney Shea were
sanctioned "for wasting the time of the subpoenaed witnesses, [] delaying the
proceedings in this matter," and "falsely representing that [appellants] must and
would appear and testify." The trial court imposed monetary sanctions in the amounts
requested at the hearing. 

 Then, on January 11, 2008, the trial court signed an amended "order on
plaintiffs' joint motion for sanctions." In this order, the trial court stated that the
conduct of appellants and Shea "relating to the motion for continuance . . . , the
request for evidentiary hearing, and the representations made by [appellants and
Shea] constitute egregious conduct and [] an abuse of the judicial process." The court
further stated that Shea's and appellants' representations regarding the evidentiary
hearing were false when made or proved no longer true when Shea and appellants
decided not to proceed with the hearing and that Shea and appellants had failed to
notify the trial court once they made the decision to pass on an evidentiary hearing. 
The trial court found that appellants' and Shea's failure to file a list of witnesses and
areas of testimony for the evidentiary hearing, as ordered by the trial court, and to
subpoena witnesses for the evidentiary hearing proved that they never intended to
proceed with the evidentiary hearing. The trial court further found that appellants'
and Shea's conduct interfered with the "core functions of the Court," was "an attempt
to delay the finality of the judgment," and was done "in bad faith [] to obstruct and
interfere with the judicial process." The trial court also stated that Shea and
appellants were warned on November 21, 2007 that they would face monetary
sanctions if they did not go forward with their requested evidentiary hearing. The
court awarded Fitzpatrick and Guion, as sanctions, their requested attorney's fees and
awarded, as sanctions, $2,000 to Wolfrom, $1,000 to Fillion, and $400 to Saulsberry,
all to be paid jointly and severally by Shea and appellants.

Motion to Withdraw

 In their third issue, appellants argue that the trial court abused its discretion in
allowing their prior counsel, Fillion and Wolfrom, to withdraw from representing
appellants because Fillion and Wolfrom's motion to withdraw failed to comply with
Texas Rule of Civil Procedure 10, and, thus, they "were unaware that a motion to
strike their pleadings based on discovery abuse ha[d] been filed and was about to be
heard." 

 We review the granting of a motion to withdraw for an abuse of discretion. 
Gillie v. Boulas, 65 S.W.3d 219, 221 (Tex. App.--Dallas 2001, pet. denied). A court
abuses its discretion when it grants a motion to withdraw that does not comply with
the mandatory requirements of rule 10. Id. However, "such error may be harmless
if the court allows the party time to secure new counsel and time for the new counsel
to investigate the case and prepare for trial." Id. (citing Walton v. Canon, Short &
Gaston, 23 S.W.3d 143, 149 (Tex. App.--El Paso 2000, no pet.)).

 An attorney may withdraw from representing a party only upon written motion
for good cause shown. Tex. R. Civ. P. 10. If another attorney will not be substituted,
the motion must state "that a copy of the motion has been delivered to the party; that
the party has been notified in writing of his right to object to the motion; whether the
party consents to the motion; and the party's last known address and all pending
settings and deadlines." Id. (emphasis added). If the motion is granted, the
withdrawing attorney shall immediately notify the party in writing of any additional
settings or deadlines of which the attorney has knowledge at the time of the
withdrawal and has not already notified the party. Id.

 Although appellants do not identify any specific deficiency in the July 19, 2007
motion to withdraw, our review of it reveals that Wolfrom and Fillion stated that they
had advised appellants in writing of the conflict and the filing of the motion, they did
not know if appellants consented or objected to the motion, appellants had been
advised of their right to object to the motion, appellants had been "given notice of the
filing of [the] motion at their last known address," there were "no pending deadlines
as of the filing of [the] motion," the matter had been set for trial on November 9,
2007, and appellants had been advised to retain separate attorneys for the corporate
appellants. The motion identified the addresses of each of the appellants, with Sims
and the two Supernova defendants sharing the same address. The filing letter
accompanying the motion, which is included in the record, also evidences that a copy
of the motion was served on Sims and Campbell. Thus, the motion met the
mandatory requirements of rule 10. (4) Moreover, as Fitzpatrick and Guion note, there
is nothing in the record to substantiate appellants' complaints that, at the time the
motion to withdraw was filed, Fitzpatrick or Guion had already filed a motion seeking
death penalty sanctions and that such a motion had already been set for hearing. 
Accordingly, we hold that the trial court did not abuse its discretion in granting the
motion to withdraw.

 We overrule appellants' third issue.

Recusal

 In their sixth issue, appellants contend that the "assigned judges abuse[d] their
discretion in failing to recuse and/or disqualify the [trial] court." Appellants cite a
"policy fostered by Harris County" that prohibits judges from testifying when
subpoenaed. Appellants ask this Court to "once and for all decide" that "a judge,
when properly summoned, must testify subject to all proper objections which are to
be made on a question-by-question basis."

 We review the assigned judges' rulings on the recusal motions for an abuse of
discretion. Tex. R. Civ. P. 18a(f). The test for an abuse of discretion is whether the
trial court acted without reference to any guiding rules or principles, or acted
arbitrarily or unreasonably. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985).

 First, we note that there is nothing in the record to substantiate the policy
complained of by appellants. Second, although the transcript from the recusal
hearings evidences that motions to quash subpoenas of the trial court judge were
filed, and granted, by the judges assigned to hear the motions to recuse, these motions
are not included in the clerk's record. Third, appellants offered no evidence in
support of their motions to recuse. Although appellants refer to two bills of exception
in their appellate briefing, appellants do not cite or discuss any evidence presented
in these bills. Appellants also do not explain how any specific piece of evidence
presented in these bills establish that the assigned judges abused their discretion in
quashing the subpoenas or denying the recusal motions. Rather, appellants generally
assert that the bills establish that the trial judge "long ago made up her mind as to
who was going to win the case and that the decision was extra-judicial in nature." We
conclude that appellants' sixth issue is inadequately briefed and presents nothing for
review. (5) See Tex. R. App. P. 38.1(h). 

 We overrule appellants' sixth issue. 

Jury Demand

 In their second issue, appellants argue that the trial court abused its discretion
"in striking a timely jury demand" because they "had not defaulted but had made an
appearance and timely requested a jury and paid the jury fee." 

 We review a trial court's denial of a jury demand for an abuse of discretion.
Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). In
conducting an abuse of discretion review, we examine the entire record. Id. We will
find an abuse of discretion only when the trial court's decision is arbitrary,
unreasonable, and without reference to guiding principles. Id.

 The Texas Constitution guarantees the right to trial by jury. See Tex. Const.
art. I, § 15. In order to be entitled to a trial by jury, a party must file a written request
for a jury trial and pay a jury fee a reasonable time before trial. Tex. Const. art. V,
§ 10 (stating that "no jury shall be empaneled in any civil case unless demanded by
a party to the case, and a jury fee be paid by the party demanding a jury, for such sum,
and with such exceptions as may be prescribed by the Legislature"). Moreover, a
party may not have a jury trial in any civil suit "unless a written request for a jury trial
is filed with the clerk of the court a reasonable time before the date set for trial of the
cause on the non-jury docket, but not less than thirty days in advance." Tex. R. Civ. 
P. 216 (emphasis added). A request for a jury trial made in advance of the thirty-day
deadline is presumed to have been made at a reasonable time before trial. Halsell v.
Dehoyos, 810 S.W.2d 371, 371 (Tex. 1991); In re J.N.F., 116 S.W.3d 426, 436 (Tex.
App.--Houston [14th Dist.] 2003, no pet.). A party may rebut that presumption by
showing that the granting of a jury trial would operate to injure the adverse party,
disrupt the court's docket, or impede the handling of the court's business. Halsell,
810 S.W.2d at 371. The refusal to grant a timely requested jury trial is harmless error
only if the record shows that no material issues of fact exist and an instructed verdict
would have been justified. Id. at 372 (citing Olson v. Tex. Commerce Bank, 715
S.W.2d 764, 767 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.)); see also
Caldwell v. Barnes, 154 S.W.3d 93 (Tex. 2004) ("The wrongful denial of a jury trial
is harmful when the case contains a question of material fact.").

 On April 10, 2007, the trial court signed its docket control order, setting the
case for trial on November 5, 2007. On September 24, 2007, more than 30 days
before trial, appellants served their jury demand on Fitzpatrick and Guion. This jury
demand was received and file-stamped by the clerk on September 25, 2007. On
September 14 and 25, 2007, the trial court entered judgment as to liability in favor of
Guion and Fitzpatrick and imposed death penalty sanctions against appellants. After
entering the liability judgments, the trial court then set a hearing on damages on
October 3, 2007, effectively moving up the final trial date from November 5, 2007
to October 3, 2007. Guion, on that same day, served appellants' with notice of the
hearing on damages. 

 Here, appellants served and filed their jury demand more than thirty days
before the November 5, 2007 trial date. Fitzpatrick and Guion have not made any
argument or cited anything in the record to support a finding that granting appellants
a jury trial, even if limited solely to damages, would have operated to injure them,
disrupted the court's docket, or impeded the ordinary handling of the court's business. 
The parties have not furnished this Court with a copy of any transcript explaining
why the trial court advanced the damages hearing date to October 3, 2007. The trial
court's only statement on the record before us as to why it denied appellants' request
for a jury was that it considered appellants' request untimely. But, as noted above,
the request is presumed timely, and nothing in the record defeats this presumption. 
 We recognize that, here, the trial court granted death penalty sanctions against
appellants and entered judgments as to liability in favor of Guion on September 14,
2007 and Fitzpatrick on September 25, 2007. But the parties have not cited any
authority indicating that these procedural developments somehow rendered
appellants' timely jury demand untimely. We conclude that appellants were entitled
to rely on their jury demand in order to at least obtain a jury trial on damages. (6) See
Tex. R. Civ. P. 243 ("If the cause of action is unliquidated or be not proved by an
instrument in writing, the court shall hear evidence as to damages and shall render
judgment therefor, unless the defendant shall demand and be entitled to a trial by jury
in which case the judgment by default shall be noted, a writ of inquiry awarded, and
the cause entered on the jury docket."); see also In re A.S., 241 S.W.3d 661, 665 (Tex.
App.--Texarkana 2007, no pet.) (concluding that defendant who defaulted by virtue
of death penalty sanctions in family law case was still entitled to rely on jury demand
and have jury trial on remaining fact questions when demand was not struck); Marr
v. Marr, 905 S.W.2d 331, 333-34 (Tex. App.--Waco 1995, no writ) (stating that
"Rule 243 recognizes, first, the importance of a party's right to a trial by jury, and,
second, that the determination of the amount of damages is a question primarily for
the jury" and that rule 243 "assures defaulting defendants, provided they properly
request and do not waive a trial by jury, that they will be afforded their right to have
a jury weigh the facts underlying the plaintiff's complaint for unliquidated damages
and ascertain from those facts the amount of their damages"); Illinois Employers Ins.
Co. of Wausau v. Lewis, 582 S.W.2d 242, 245-46 (Tex. Civ. App.--Beaumont 1979,
writ ref'd n.r.e.) (concluding that trial court was not authorized to remove case from
jury docket when plaintiff had previously demanded and paid jury fee, plaintiff
subsequently sought to withdraw case from jury docket, defendant that had defaulted
as to liability as a result of discovery sanctions had objected to withdrawal of case
from jury docket, and defendant had demanded jury trial on issue of damages); W.
Union Tel. Co. v. Skinner, 128 S.W. 715, 716 (Tex. Civ. App. 1910) (emphasis
added) (stating that effect of default judgment deprived appellant privilege of filing
answer and that appellant "would be entitled to no privilege thereafter except to
demand a jury for a trial on the facts as to damages"). Accordingly, we hold that the
trial court abused its discretion in denying appellants' jury demand.

 We now must consider whether the trial court's error was harmless. At the
October 3, 2007 damages hearing, appellants sought a continuance, stating that they
had received insufficient notice of the hearing date and that, because they had filed
a jury demand, they were entitled to proceed before a jury on damages. After the trial
court overruled appellants' motion, Fitzpatrick and Guion testified in support of their
requested damages figures. Appellants' only involvement in the damages hearing
was to argue to the trial court that it was not prepared to address the damages
evidence presented by Fitzpatrick and Guion. We conclude that the evidence on
damages presented issues of material fact, and, thus, the trial court's error in denying
appellants' jury demand was not harmless.

 We sustain appellants' second issue. 

New Trial


 In their first issue, appellants contend that the trial court abused its discretion
in "failing to grant a new trial when the evidence was uncontroverted that [they] were
entitled to a new trial." Appellants do not provide a specific record reference in
support of this issue. Rather, they globally assert that their "motion incorporated all
the points of error raised thus far in this brief." Appellants also vaguely assert that
"the most compelling argument supported by evidence was the imposition of the
death penalty sanctions and how these were excessive." However, appellants do not
point to or discuss any evidence or cite to any relevant authorities in support of this
argument. Accordingly, we hold that appellants' first issue is inadequately briefed
and presents nothing for review. See Tex. R. App. P. 38.1(h).

 We overrule appellants' first issue. (7) 

Sanctions

 In their fourth and fifth issues, appellants argue that the trial court's "order
sanctioning [them] and their counsel [is] void as a matter of law" because "the motion
for new trial was overruled by operation of law and no timely post-judgment motion
for sanctions was on file" and the trial court abused its discretion in "imposing sua
sponte sanctions without giving notice or the opportunity to be heard." Appellants
further assert that no other timely post-judgment motions were filed within the thirty
day period following the final judgment and, thus, the trial court did not have
jurisdiction to enter sanctions. Appellants further assert that a new trial motion may
be filed solely to extend appellate deadlines, it was Shea's choice to put on evidence,
and the trial court was required to conduct an evidentiary hearing and provide notice
before imposing sanctions. 

 In reviewing the trial court's sanction orders, we "must independently review
the entire record to determine whether the trial court abused its discretion." Am.
Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006).

 Here, it is undisputed that appellants timely filed their new trial motion on
October 11, 2007. See Tex. R. Civ. P. 329b(a). Because December 25, 2007,
Christmas Day, was the seventy-fifth day after the date the judgment was signed, the
trial court timely signed its first order denying appellants' new trial motion and
"imposing sanctions for wasted attorney's time" on December 26, 2007. See Tex. R.
Civ. P. 4 (providing that "[i]n computing any period of time prescribed or allowed by
these rules, . . . [t]he last day of the period so computed is to be included, unless it is
a Saturday, Sunday or legal holiday, in which event the period runs until the end of
the next day which is not a Saturday, Sunday or legal holiday"); Tex. R. Civ. P.
329b(c) (providing that "[i]n the event an original or amended motion for new trial
or a motion to modify, correct or reform a judgment is not determined by written
order signed within seventy-five days after the judgment was signed, it shall be
considered overruled by operation of law on expiration of that period"). 

 After signing its December 26, 2007 order, the trial court "ha[d] plenary power
to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty
days after all such timely-filed motions [were] overruled, either by a written and
signed order or by operation of law, whichever occurs first." See Tex. R. Civ. P.
329b(e). Thus, contrary to appellants' assertions, the trial court still had plenary
power over the case when it signed its amended sanctions order on January 11, 2008. 
 In regard to appellants' argument that the trial court could not have entered
sanctions because Fitzpatrick and Guion did not file their sanctions motions within
thirty days of the final judgment, we note that a trial court may impose sanctions after
a judgment is entered "so long as it retains plenary jurisdiction." Malone v. Hampton,
182 S.W.3d 465, 468 (Tex. App.--Dallas 2006, no pet.) (citing Scott & White Mem'l
Hosp. v. Schexnider, 940 S.W.2d 594, 596 (Tex. 1996) (per curiam)). Here, the
sanctions motion was necessarily filed more than thirty days after final judgment
because the sanctionable conduct did not begin until November 16, 2007 and
continued through December 14, 2007. Appellants have not cited any authority
immunizing a party for sanctionable conduct during this period. Such a rule would
run contrary to general authority indicating that a sanctions order is not required to
be included in a final judgment, see Lane Bank Equipment Co. v. Smith Southern
Equipment, Inc., 10 S.W.3d 308, 313 (Tex. 2000), and that a trial court retains
authority to impose sanctions so long as it retains plenary jurisdiction. See Scott &
White Mem'l Hosp., 940 S.W.2d at 596. Accordingly, we hold that the trial court did
not err in entering sanctions on the ground that the sanctions motion was not timely
filed.

 In regard to appellants' assertions that the mere act of filing a new trial motion
is not sanctionable, the trial court lacked authority to enter sanctions, and the trial
court did not provide appellants with notice of the sanctions, we note that Texas
courts "have the inherent power to sanction for an abuse of the judicial process that
may not be covered by any specific rule or statute." See Houtex Ready Mix Concrete
& Materials v. Eagle Constr. & Envtl. Servs., L.P., 226 S.W.3d 514, 522 (Tex.
App.--Houston [1st Dist.] 2006, no pet.); Kings Park Apartments, Ltd. v. Nat'l Union
Fire Ins. Co., 101 S.W.3d 525, 541 (Tex. App.--Houston [1st Dist.] 2003, pet.
denied); Island Entm't, Inc. v. Castaneda, 882 S.W.2d 2, 5 (Tex. App.--Houston [1st
Dist.] 1994, writ denied). The inherent power to sanction "exists to the extent
necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." 
Houtex Ready Mix Concrete & Materials, 226 S.W.3d at 522. "In applying its
inherent power to impose sanctions, a trial court must make findings to support its
conclusion that the conduct complained of significantly interfered with the court's
legitimate exercise of its core functions." Id. 

 Here, the trial court directly tied its sanctions order to appellants' making of
false representations in obtaining an evidentiary hearing and purposefully delaying
the case. Although the trial court did not cite its specific authority in its order, the
court detailed the conduct that served as the basis for the sanctions, found appellants'
conduct to be "egregious," and found that appellants committed "an abuse of the
judicial process." The court also found appellants had interfered with the court's
"core functions" and had acted "in bad faith [] to obstruct and interfere with the
judicial process." We conclude that the trial court based its sanctions order on its
inherent power to impose sanctions. 

 The trial court also made specific findings that appellants had made
misrepresentations to the court to obtain an evidentiary hearing that they never
intended to pursue and, thus, delayed the case. The trial court noted that appellants
did not provide, as ordered by the trial court, the witness list or other information in
preparation for this evidentiary hearing and did not provide notice that they intended
to pass the hearing. The court found that, by their conduct, appellants required the
court and parties to prepare for an evidentiary hearing and subpoena witnesses. The
court, in order to determine a proper sanction tied directly to the conduct at issue,
received evidence on the amount of time expended and fees incurred by the parties
and witnesses in preparing for the evidentiary hearing. The court also recited that,
prior to imposing the sanctions, at a November 21, 2007 hearing, it had put appellants
on notice that it believed that appellants, by requesting the evidentiary hearing, were
engaging in stalling tactics, and it warned appellants that they would face sanctions
if they passed the evidentiary hearing that they were requesting. At the time it
provided these warnings, the trial court had already entered multiple orders in the
case regarding appellants' discovery abuse and general conduct throughout the entire
case. 

 Despite these warnings, at the December 14, 2007 evidentiary hearing,
appellants immediately passed the evidentiary hearing, and the trial court again
notified appellants that it intended to impose sanctions for appellants' conduct. 
Appellants offered no explanation as to why they had failed to provide the trial court,
parties, or witnesses with any advance notice that they intended to pass the hearing
and why they had not supplied the trial court or parties with any of the information
ordered by the trial court in preparation for the evidentiary hearing. Shea challenged
the trial court's ability to enter sanctions at the hearing, but then invited Fitzpatrick
and Guion to file a written motion for sanctions, to which he agreed to respond. The
trial court then stated on the record that it would like for Fitzpatrick and Guion to file
a written sanctions motion before it decided what sanctions would be appropriate, and
it specifically set the sanctions issue for submission at 8:00 a.m. on December 31,
2008. Fitzpatrick and Guion filed their motion, which was supported by evidence,
and appellants failed to respond to the motion. 

 In sum, the trial court did not sanction appellants merely for filing a new trial
motion, the trial court awarded sanctions within its plenary power, the trial court had
authority to enter sanctions, and appellants were provided notice of the sanctionable
conduct and of the sanctions hearing. Accordingly, we hold that the trial court did
not abuse its discretion in imposing sanctions against appellants.

 We overrule appellants' fourth and fifth issues.

Conclusion

 We reverse the judgment of the trial court for a new trial on the issue of
damages. We affirm the judgment of the trial court in all other respects, including the
trial court's imposition of death penalty sanctions against appellants as to liability and
the trial court's imposition of sanctions against appellants for their conduct related
to the proceedings on their new trial motion. 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.

1. In the trial court, appellants "objected" to the omission of Fitzpatrick from this
petition, noting that the only plaintiff identified in the petition was Guion. Appellants
do not raise this complaint on appeal.
2. The notice only referenced Guion. The parties do not cite to any notice provided by
Fitzpatrick.
3. The parties do not explain why this hearing occurred on December 14, 2007 rather
than December 21, 2007.
4. In a footnote, appellants suggest that the trial court clerk may not have forwarded the
order and required notices to appellants. On August 21, 2007, the trial court signed
an order granting the motion to withdraw and ordering that the corporate appellants
have a new attorney file a notice of appearance by September 13, 2007. The trial
court further ordered that Wolfrom and Fillion mail a copy of the order by certified
mail to appellants' last known addresses. There is nothing in the record to
substantiate appellants' suggestion, and we will not find an abuse of discretion based
upon appellants' mere suggestion that the trial court did not provide them with the
proper notices. Appellants, in the factual background section of their brief, also make
the following assertion: "Interestingly enough, there is no mention of outstanding
deadlines relating to the district court's prior discovery orders. . . ." However,
appellants cite no authority for the proposition that the previously passed deadlines
of these prior orders would qualify as "pending" deadlines under rule 10, and we
decline to hold that the prior deadlines contained in these orders were "pending"
deadlines. In fact, appellants made no allegation or showing that they were not
notified of the trial court's prior discovery orders. 
5. Had appellants preserved their general complaint that the assigned judges erred in
quashing the subpoenas issued to the trial judge, appellants still were required to show
extraordinary circumstances to justify compelling the trial judge to testify regarding
her mental processes in arriving at her decisions. Tate v. State, 834 S.W.2d 566,
569-70 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd); Thomas v. Walker, 860
S.W.2d 579, 582 (Tex. App.--Waco 1993, no writ). Here, appellants presented no
evidence at the recusal hearings. In their "bill of exceptions," appellants' referred to
statements made by the trial judge during various hearings. Thus, appellants failed
to make a threshold showing of improper conduct on the part of the trial judge that
would have justifed compelling her to testify. Tate, 834 S.W.2d at 569-70. 
6. Even the trial court agreed at the October 3, 2007 hearing that appellants would still
have been entitled to a jury trial on damages, after it entered the death penalty
sanctions, if appellants had "timely" filed a jury demand. As stated above, we
conclude that appellants' jury demand, which was served and filed more than thirty
days before the trial setting, and which was served on the day preceding and filed on
the day of the trial court's resetting of the damages hearing, was timely. 
7. Although we have held that appellants have inadequately briefed their first issue, we
note that, based on our prior holding that the trial court erred in denying appellants'
jury demand as to damages, and based upon the fact that appellants have not presented
any direct challenge to the death penalty sanctions, appellants, upon remand, will be
entitled a new trial on damages only and the death penalty sanctions as to liability will
remain in place.